[No. D059090. Fourth Dist., Div. One. July 18, 2012.]

ROBERT CZAJKOWSKI, Plaintiff and Appellant, v.
HASKELL & WHITE, LLP, et al., Defendants and Respondents.

**COUNSEL**

Janis Law Group, Dean T. Janis; Deval R. Karina Zaveri; Mayer Mangan and Katherine Mayer Mangan for Plaintiff and Appellant.

Garrett & Tully, Stephen J. Tully, Ryan C. Squire and John B. Greene for Defendants and Respondents.

**OPINION**

**HUFFMAN, J.**—Plaintiff Robert Czajkowski (Appellant) filed this action for damages against defendants Haskell & White, LLP, an accounting firm and

five of its members (together Respondents)[1], alleging professional negligence and related theories arising out of their performance, during 2001 and 2002, of auditing duties for a company (MeltroniX; the Company) of which Appellant was formerly the president and chief executive officer (CEO). The Company was forced to cease operations in 2002, largely due to its liability for unpaid payroll taxes, and in federal proceedings lasting from 2006 to 2009, Appellant as its CEO was personally assessed with over $500,000 in its unpaid federal income taxes and penalties. In 2009, Appellant settled the matter by paying the Company's back taxes and penalties of over $340,000, and incurred attorney fees.

In this action, Appellant claims Respondents breached the duties imposed on them by the engagement letters with the Company, by failing to disclose information that came to their attention in 2001 and 2002 about the nonpayment of such taxes caused by misconduct of the Company's former chief financial officer (CFO Randy Siville; not a party here). Appellant asserts he excusably did not discover any basis for a claim against Respondents until 2008, when their auditing workpapers were subpoenaed by the government in the federal proceedings, and he obtained a copy.

Respondents brought demurrers to the first amended complaint (FAC), asserting all causes of action in this professional negligence action were barred by the two-year statute of limitations. (Code Civ. Proc., § 339, subd. 1.)[2] Respondents also argued that Appellant lacked standing to sue upon the contractual engagement letters in which he was not expressly named as a party. The trial court sustained the demurrers without leave to amend.

Having reviewed the face of the pleadings in light of well-established limitations principles, we conclude Appellant has not successfully pled around the two-year statutory bar, nor has he supplied a showing of any realistic possibility of successful amendment. The trial court correctly analyzed the relevant issues and we affirm.

I

*BACKGROUND: FILING OF ACTION*

For purposes of analyzing the demurrer rulings, we take the facts properly pleaded to assess whether they may state their causes of action, as matters of

---

[1] Individual members of the respondent firm sued here are: Wayne Pinnell, David White II, Michelle McDuffie, Joyce Saller and Todd Collins.

[2] All further statutory references are to this code unless noted. Section 339, subdivision 1, imposes a two-year limitation period for "[a]n action upon a contract, obligation or liability not founded upon an instrument of writing."

law. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) Appellant alleges essentially the following sequence of events. From September 2001 through September 2002, he was the CEO, president, and director of the Company. Respondents are qualified accounting professionals that were engaged by the Company in 2001, and again in 2002, to audit its financial statements for the previous year and also to review its interim financial statements. In their engagement agreements with the Company, Respondents agreed to inform it of any errors, fraud, illegal acts, or reportable conditions that came to their attention (unless clearly inconsequential).[3] Respondents created and delivered audit reports and reviews to the Company and to Appellant in his official capacity. The reports did not identify any outstanding tax liabilities.

A third party creditor brought enforcement proceedings against the Company in 2002, resulting in the discovery of its large outstanding tax liabilities. Appellant participated in an internal investigation and in August 2002, he learned from the Company's CFO that since 2001, the CFO had been diverting Company funds intended for tax payments, so the Company had failed to pay large sums of payroll withholding taxes. The Company went under and Appellant lost his job.

Originally, the State of California held Appellant personally liable for the unpaid payroll taxes, but after an investigation, it released him from liability, concluding he had no knowledge of the CFO's misdeeds until August 2002 and he had not willfully withheld monies due.

In October 2006, the Internal Revenue Service (IRS) assessed Appellant personally for the Company's unpaid payroll taxes and penalties. (26 U.S.C. § 6672.)[4] Appellant responded on June 19, 2007, by filing a federal civil complaint for a refund of the penalties collected from him for the unpaid payroll taxes (the federal proceedings). The United States counterclaimed against Appellant for the outstanding payroll tax assessments. In that context,

---

[3] In *Bily v. Arthur Young & Co.* (1992) 3 Cal.4th 370, 381 [11 Cal.Rptr.2d 51, 834 P.2d 745] (*Bily*), the Supreme Court describes the applicable " 'Generally Accepted Auditing Standards' " which are promulgated by the American Institute of Certified Public Accountants a national professional organization of CPA's. The FAC refers to their terms as they are implemented by published "Statements on Auditing Standards" (SAS). SAS-55, for example, requires auditors to take into account a company's internal financial control structure, as part of the audit design and performance.

[4] Title 26 United States Code section 6672(a) imposes as a general rule that "Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of [such] tax . . . ."

in June 2008, the prosecution subpoenaed Respondents' accounting records from its engagements with the Company. Respondents produced the records and Appellant's counsel obtained a copy in September 2008. In March 2009, Appellant settled the matter by stipulating to a judgment for back taxes and penalties, and incurred attorney fees.

In March 2010, Appellant filed this state court complaint on theories of professional negligence, breach of contract and implied covenants, as well as negligent misrepresentation and constructive fraud. After a demurrer was sustained with leave to amend, he filed the FAC, expanding his discovery allegations. Appellant alleges that he had standing to sue as an express or intended third party beneficiary of the Company's engagement agreements, due in part to his exposure to personal liability for the Company's tax defaults. (26 U.S.C. § 6672.)

In the FAC, Appellant alleges he was unable to discover his claims until September 2008, because he did not have access to Respondents' auditing workpapers until the government subpoenaed them in the federal proceedings. Appellant contended that since the CFO had successfully concealed his actions until August 2002, there was no reason to suspect that Respondents were aware of the misconduct at the time (failure to pay the payroll withholding taxes). When Appellant investigated in 2005, one of Respondents' employees told him that any significant information would have been included in footnotes in financial statements. The reports did not include tax liability information.

Appellant therefore argued that it was not until September 2008, when his attorney obtained the subpoenaed accounting records in connection with the federal proceedings, that he became able to discover any basis to make a claim against Respondents to recover damages attributable to his assessed personal liability for the unpaid taxes. Specifically, Appellant claims that Respondents' 2001 and 2002 auditing workpapers, provided in the federal discovery, showed there were payroll taxes payable, tax liability balances were increasing, and there were tax arrearages, although Respondents considered the matter to be minor, because the CFO told them he had recorded accruals for such a possibility. According to Appellant, these auditing workpapers reflect Respondents' understanding and acknowledgment of lack of segregation of duties under the CFO, presenting a heightened risk of fraud or irregularity, which triggered their duty to disclose under the applicable accounting standards. Respondents allegedly breached their duties to report such a known "condition" or "illegal act," i.e., the Company's failure to pay its taxes, and caused harm to Appellant.

Thus, Respondents' omission from their reports of any references to unpaid taxes was alleged to demonstrate they had contemporaneous knowledge of

the Company's failure to make the appropriate tax payments, but actively concealed this until the subpoena production was made in 2008.

## II

### *DEMURRER TO FAC; RULING*

Respondents filed their demurrer and motion to strike the FAC, first challenging the standing of Appellant to sue for professional negligence, on the grounds that the engagement letter was executed by the Company, without specifying Appellant as a party. Respondents further argued that the face of the pleading showed that the two-year statute of limitations started to run when Appellant received the confession from the CFO in August 2002 that the Company's taxes had intentionally not been paid. Alternatively, Respondents claimed the action was obviously time-barred, as shown by Appellant's knowledge that he was being held personally liable for the unpaid taxes and penalties throughout the 2006–2009 proceedings. However, his complaint was not filed until March 2010. In support of their arguments, Respondents provided copies of the pleadings in the federal tax proceedings for judicial notice.

In opposition, Appellant contended he was an intended beneficiary of the engagement letters, but acknowledged that an audit was not guaranteed to detect fraud or illegal activity. He claimed the auditing materials were intended for the use of the Company's board of directors and management, including Appellant.

Appellant sought a ruling he was excusably delayed in discovering Respondents' potential liability, so the action did not accrue until 2008 because of Respondents' alleged fraudulent concealment of their knowledge about the CFO's wrongdoing, when it came to their attention. In support, he provided additional material for judicial notice, consisting of the standardized accounting principles that Respondents had allegedly violated, and a copy of the redlined FAC, showing the amendments recently made.

The trial court took judicial notice of the documents submitted, and agreed with Respondents that the facts pled on the face of the FAC disclosed that the action was untimely filed. Further, the court ruled that Appellant lacked sufficient standing to sue the Company's auditor for alleged professional negligence. The demurrers were sustained without leave to amend, the motion to strike was deemed moot, and a judgment of dismissal was entered. This appeal followed.

## III

### *APPLICABLE STANDARDS; APPROACH TO STANDING ISSUES*

We apply well-established rules of review. "A demurrer tests the legal sufficiency of the complaint. [Citation.] Therefore, we review the complaint de novo to determine whether it contains sufficient facts to state a cause of action. [Citation.] 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law.' [Citation.] The trial court exercises its discretion in declining to grant leave to amend. [Citation.] If it is reasonably possible the pleading can be cured by amendment, the trial court abuses its discretion by not granting leave to amend. [Citation.] The plaintiff has the burden of proving the possibility of cure by amendment." (*Grinzi v. San Diego Hospice Corp.* (2004) 120 Cal.App.4th 72, 78 [14 Cal.Rptr.3d 893]; see *Blank v. Kirwan, supra*, 39 Cal.3d 311, 318.)

On demurrer, a court must accept properly pleaded facts as true, but a demurrer does not admit the plaintiff's contentions nor conclusions of law or fact. (*People ex rel. Lungren v. Superior Court* (1996) 14 Cal.4th 294, 300–301 [58 Cal.Rptr.2d 855, 926 P.2d 1042].) It is appropriate to " 'consider judicially noticed matters.' " (*E-Fab, Inc. v. Accountants, Inc. Services* (2007) 153 Cal.App.4th 1308, 1315 [64 Cal.Rptr.3d 9] (*E-Fab, Inc.*).) " 'Because the trial court's determination is made as a matter of law, we review the ruling de novo.' " (*Ibid.*)

In their demurrer and motion to strike, Respondents raised not only a limitations bar to the action, but also a lack of standing to sue. The trial court issued a ruling in favor of Respondents on the standing claim regarding the professional negligence cause of action (without reaching the contractual theories).

The FAC alleges that the engagement letters were entered into between Respondents and the Company, and Appellant was, ex officio, an express or intended third party beneficiary of the letters and of Respondents' professional obligations, and thus the equivalent of a client for certain purposes. Admittedly, the issue of standing presents difficult analytical questions here, based on the following language in *Bily, supra*, 3 Cal.4th 370, 406–407, footnote 16: "In theory, there is an additional class of persons who may be the practical and legal equivalent of 'clients.' It is possible the audit engagement contract might expressly identify a particular third party or parties so as to make them express third party beneficiaries of the contract. Third party beneficiaries may under appropriate circumstances possess the rights of

parties to the contract. [Citations.] [However, t]his case presents no third party beneficiary issue. . . . [W]e have no occasion to decide whether and under what circumstances express third party beneficiaries of audit engagement contracts may recover as 'clients' under our holding."

We need not express any substantive position on the standing issues, since the limitations issues are dispositive under these circumstances. We assume arguendo that Appellant can sufficiently assert standing to sue the Company's auditors for alleged professional negligence and the related causes of action, and now turn to the discovery rule arguments.

IV

*RULES REGARDING DISCOVERY OF FACTS*
*CONSTITUTING THE CAUSES OF ACTION*

A.    Applicable Legal Principles

■    Where a demurrer raises the bar of the applicable statute of limitations, the court assesses whether " 'the complaint shows on its face that the statute bars the action.' " (*E-Fab, Inc., supra*, 153 Cal.App.4th 1308, 1315.) Such a defect " 'must clearly and affirmatively appear on the face of the complaint; it is not enough that the complaint shows merely that the action may be barred.' [Citations.]" (*Id.* at p. 316.)

■    The parties do not dispute that the two-year limitations period of section 339, subdivision 1 applies to each of the causes of action in the FAC, since they are all intertwined with the professional malpractice allegations (negligent misrepresentation, constructive fraud, breach of contract and implied covenants). (*Curtis v. Kellogg & Andelson* (1999) 73 Cal.App.4th 492, 503 [86 Cal.Rptr.2d 536] (*Curtis*).) Generally, the bar of the statute of limitations is raised as an affirmative defense, subject to proof by the defendant. (*Samuels v. Mix* (1999) 22 Cal.4th 1, 10 [91 Cal.Rptr.2d 273, 989 P.2d 701].)

However, when a plaintiff relies on the discovery rule or allegations of fraudulent concealment as excuses for an apparently belated filing of a complaint, "the burden of pleading and proving belated discovery of a cause of action falls on the plaintiff." (*Investors Equity Life Holding Co. v. Schmidt* (2011) 195 Cal.App.4th 1519, 1533 [126 Cal.Rptr.3d 135]; see *April Enterprises, Inc. v. KTTV* (1983) 147 Cal.App.3d 805, 833 [195 Cal.Rptr. 421] [" 'It is plaintiff's burden to establish "facts showing that he was not negligent in failing to make the discovery sooner and that he had no actual or presumptive knowledge of facts sufficient to put him on inquiry." ' "].)

More specifically, to overcome an apparent limitations bar, the plaintiff claiming delayed discovery of the facts constituting the cause of action has the burden of setting forth pleaded facts to show " '(1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence. The burden is on the plaintiff to show diligence, and conclusory allegations will not withstand demurrer.' " (*E-Fab, Inc., supra*, 153 Cal.App.4th 1308, 1324, italics omitted.)

In evaluating the reasonableness of a plaintiff's reliance on alleged misrepresentations, the courts will consider what is apparent from the pleadings about the plaintiff's knowledge and experience. " 'Generally, "[a] plaintiff will be denied recovery only if his conduct is manifestly unreasonable in the light of his own intelligence or information." ' " (*Broberg v. The Guardian Life Ins. Co. of America* (2009) 171 Cal.App.4th 912, 921 [90 Cal.Rptr.3d 225] (*Broberg*).)

## B. Two Types of Injury?

Appellant claims that the injury he suffered had two concurrent causes; not only the misconduct of the CFO in not paying the taxes, but also Respondents' misfeasance and concealment of facts in their auditing reports about the unpaid taxes, thus allegedly causing either the same or further harm to the Company and Appellant. He argues for justifiably delayed accrual of these claims against Respondents, because a limitations period should not start to run until the plaintiff is on notice of the facts constituting the separate injury. (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 806–807 [27 Cal.Rptr.3d 661, 110 P.3d 914] (*Fox*).)[5]

■ In the context of professional negligence cases that assert negligent misrepresentations, the reasonableness of the plaintiff's alleged reliance on the representations may be treated as a question of fact. Nevertheless, if the undisputed facts do not leave any room for reasonable differences of opinion, the question of when "a plaintiff reasonably should have discovered facts for purposes of the accrual of a cause of action or application of the delayed discovery rule . . ." should be decided as a matter of law, by evaluating the allegations in light of matters that are properly subject to judicial notice. (*Broberg, supra*, 171 Cal.App.4th 912, 921; see *Rita M. v. Roman Catholic*

---

[5] After undergoing surgery, the plaintiff in *Fox* was able to promptly recognize she had a cause of action for medical malpractice against the defendant surgeon, and she was also allowed to assert justifiably delayed discovery of a related cause of action for products liability against a different defendant (medical device manufacturer). The two types of injuries did not necessarily accrue at the same time, based on the knowledge she had. (*Fox, supra*, 35 Cal.4th 797, 802–803, 814–815.)

*Archbishop* (1986) 187 Cal.App.3d 1453, 1460 [232 Cal.Rptr. 685] [fraudulent concealment allegations ineffective where plaintiff is otherwise on notice of potential claim].)

### C.   Face of FAC and Appellant's Arguments

In light of the above principles, we evaluate the sequence of events alleged in the FAC, and take into account the proposed amendment suggested in the reply brief (i.e., added allegations about Respondents' silence during the Company's internal investigations). (*Blank v. Kirwan, supra,* 39 Cal.3d 311, 318; § 472c, subd. (a).) In any case, the gist of Appellant's liability theory has consistently been that Respondents' reports showed the Company had no significant payroll tax liabilities, although in meetings and communications, Respondents had learned something about such liabilities, but nevertheless they stood by silently in violation of their professional duties to disclose that knowledge.

Appellant has several theories why his FAC successfully alleges delayed discovery, in that he could not discover his claims against Respondents until September 2008. First, he reasonably assumed in 2002 that the CFO must have fooled Respondents as well as Appellant, so Appellant did not come under any duty to investigate the role of Respondents at that time.

Next, even if Appellant should have suspected some breach of duty by Respondents occurred during the 2001 and 2002 timeframe, he claims only factual questions may exist about whether an investigation would have been successful in uncovering the extent of their knowledge of the unpaid tax situation at that time. Appellant suggests the "accrual trigger" of the statutory period occurred only upon receipt of the 2008 discovery copies that he obtained from the government, when he learned that Respondents' auditing papers showed they had some knowledge about the Company's tax liabilities.

█  Appellant relies on *Electronic Equipment Express, Inc. v. Donald H. Seiler & Co.* (1981) 122 Cal.App.3d 834 [176 Cal.Rptr. 239] (*Electronic Equipment Express*), as support for the claim there was a fiduciary relationship between the Company and Respondents, so that Appellant should be held to a lesser requirement of diligent investigation of the circumstances surrounding the Company's tax liabilities. The court in that case further states that when a plaintiff asserts such a reduced requirement of diligence, because of a fiduciary relationship with the defendant, the plaintiff is still "required to establish facts sufficient to show that he made an actual discovery of *hitherto unknown information within two years before the filing of the action in order to satisfy the duty of diligence* and to thereby come within the limitations period. [Citations.] However, plaintiff does have a duty to investigate even

where a fiduciary relationship exists when 'he has notice of facts sufficient to arouse the suspicions of a reasonable man.' [Citations.] *If such facts actually do come to his attention he may not sit idly by for at that point the statute of limitations begins to run.*" (*Id.* at p. 855, italics added.)[6]

An example of a professional malpractice case held to be properly barred by the plaintiff's lack of reasonable diligence in investigating the causes of an injury is *Apple Valley Unified School Dist. v. Vavrinek, Trine, Day & Co.* (2002) 98 Cal.App.4th 934, 939, 942–944 [120 Cal.Rptr.2d 629] (*Apple Valley*). There, the appellate court applied the discovery rule in the context of malpractice allegations against accountants, brought by a third party that relied upon the accountants' reports, which were inaccurate. The court analyzed the circumstances outlined in the complaint to determine the time at which that plaintiff "knew or should have known the alleged misrepresentations in defendants' audit report . . . might be incorrect." (*Id.* at p. 943.) The court found the complaint was time-barred, because the face of the pleadings showed that more than two years before filing, the plaintiff was in possession of facts that would have caused a reasonable plaintiff to suspect that the alleged injury (improper reporting of school data, causing illegal public funding) was caused by someone's wrongdoing: "It is clear from the face of the complaint in this case that the District had at least 'a suspicion of wrongdoing' [citation] by defendants more than two years before it filed suit" (*ibid.*), and "[t]hat suspicion was sufficient to satisfy the discovery element for commencement of the statute of limitations" (*id.* at p. 944).

Another example of such a correctly time-barred action is *Curtis, supra*, 73 Cal.App.4th 492, 500–502. There, the client-plaintiffs' claims against their former accountants were filed too late, when the clients were claiming excusable delay because the defendants had not admitted to their own professional negligence. When the court examined the circumstances outlined in the pleadings, it determined that the plaintiffs could have reasonably figured out from their IRS notice of deficiency that their accountants' tax services might have been substandard. The facts known to all parties about the finances of the clients did not support allegations that the accountants had concealed from the clients that there might be grounds for a malpractice claim against them. Specifically, the clients in *Curtis* were aware they were being audited by the IRS and were given notice that the IRS issued a tax deficiency letter, an excessive amount of time before the action was filed: "These were the critical facts which should have aroused the [clients'] suspicions about the correctness of the actions previously undertaken by [the accountants]." (*Id.* at p. 502.) This was appreciable harm that the clients

---

[6] We need not decide the scope of an outside auditor's fiduciary duty to its client or to the client's CEO. (See *Electronic Equipment Express, supra*, 122 Cal.App.3d 834, 852–855; *Moonie v. Lynch* (1967) 256 Cal.App.2d 361, 364 [64 Cal.Rptr. 55].)

could reasonably have suspected was caused by " ' "professional blundering." ' " (*Id.* at p. 501.) At that point, the clients had the "responsibility to undertake basic inquiry to determine whether the material facts of which [they were] fully aware could form the basis for a legal claim." (*Id.* at p. 502.)

## D. Analysis

To address whether the discovery rule properly postponed accrual of these causes of action, we examine whether the face of the FAC sets forth such circumstances and sequences of events that should have reasonably served to alert Appellant that Respondents' action or inactions had possibly caused injury to him. He had to allege not only late discovery, but also inability to discover the relevant facts earlier. It begs the question for Appellant to say that because the CFO had successfully covered up his own misconduct until August of 2002, Appellant could not reasonably have formed any suspicion until September 2008 that any other party, such as various financial professionals employed by the Company, had potentially contributed to the problem through negligence with respect to the tax deficiencies.

As shown on the face of the complaint, Respondents were retained by the Company for auditing purposes, and all parties acknowledge that Respondents were not investigators who were obligated to discover reportable conditions or illegalities. Instead, Respondents were obligated to disclose such material errors, illegalities or reportable conditions that came to their attention, unless such conditions were deemed inconsequential. The Company incurred significant tax liability in 2002, and after the Company folded, Appellant was being pursued for personal liability. It is not too much of a stretch to expect a reasonable person in Appellant's shoes, a knowledgeable executive, to extrapolate from his 2002 knowledge of one cause of an injury (the CFO's failure to pay taxes) that there might be other concurrent causes, in the actions or inactions of other retained professionals who had been dealing with or reporting on the Company's finances.

In 2005, one of Respondents' accountants told Appellant that information gained about unpaid taxes would have been placed in a footnote in the reports, and Appellant does not dispute that there was none, but he did not undertake any further investigation about what was known by Respondents, or when. He argues that Respondents never volunteered to supply their workpapers to him, or that an investigation would have been fruitless. But it was not "*hitherto unknown information*" that other parties, such as Respondents, had professional responsibilities in examining Company records in 2001 and 2002, particularly its tax records. (*Electronic Equipment Express, supra*, 122 Cal.App.3d 834, 855, italics added.) The facts known to all parties, about

(1) the finances of the Company (investigation and notice from the IRS of tax deficiencies), (2) the professional duties imposed on Respondents, and (3) the contents of their reports, do not provide support for his allegations that there were no possible grounds, in the 2002 through 2004 timeframe, for any potential malpractice claim against the auditors. (*Curtis, supra*, 73 Cal.App.4th 492, 500–502.)

From 2006 through 2009, Appellant was being pursued by the IRS until he settled the case, paying taxes and penalties attributable to the Company's failure to pay taxes. The judicially noticed material about the federal proceedings shows that Appellant was challenging his personal tax liability. (*E-Fab, Inc., supra*, 153 Cal.App.4th at p. 1315.) However, it was not until the federal attorney propounded discovery in 2008, in connection with the counterclaim, that the auditing workpapers were produced. Appellant benefited from that production, but has not shown why he could not or should not have pursued similar production on his own behalf, at an earlier time. It is not an answer for Appellant to say, "The very fact that [Respondents] argue[] [Appellant] might have needed civil discovery to obtain the work papers highlights the fact question of whether [Respondents] would have voluntarily handed over the work papers that prove their deceit." Instead, he makes only contentions or conclusions about why he did not think he had to take any action earlier, to investigate whether there was any factual basis for a claim against Respondents. (*Fox, supra*, 35 Cal.4th at p. 803.) Because he was always aware of the general role of Respondents in examining the Company's finances, including its taxation reports, he could not wait for any admission by them of fault, to form at least " 'a suspicion of wrongdoing' " when it all went bad. (*Apple Valley, supra*, 98 Cal.App.4th at p. 943.)

█ Based on all the facts he knew before 2008, Appellant had a duty to investigate even a fiduciary's actions, or inquire about the work done, because on an objective basis, all of these circumstances placed him on " 'notice of facts sufficient to arouse the suspicions of a reasonable man.' [Citations.] *If such facts actually do come to his attention he may not sit idly by for at that point the statute of limitations begins to run.*" (*Electronic Equipment Express, supra*, 122 Cal.App.3d 834, 855, italics added.) On this set of allegations, we believe that only one reasonable conclusion is possible, that the FAC is barred by the applicable limitations period. On its face, it does not support any interpretation that a reasonably diligent investigation at the relevant times, within two years of August 2002 or even shortly thereafter, would not have revealed some actual or presumptive knowledge of such facts and circumstances as would have given him timely notice of some potential claim against the Company's auditors. (*Fox, supra*, 35 Cal.4th at p. 803; *April Enterprises, Inc. v. KTTV, supra*, 147 Cal.App.3d 805, 833 [plaintiff's burden to show lack of negligence in failure to make earlier discovery of claim].) The FAC was correctly dismissed.

## DISPOSITION

Judgment is affirmed. Respondents are awarded their costs on appeal.

Benke, Acting P. J., and Aaron, J., concurred.