Filed 10/29/14  Rosolowski v. People Media CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| GREG ROSOLOWSKI et al., | B250482 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC499042) |
| v. | |
| PEOPLE MEDIA, INC. et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, William F. Highberger, Judge.  Affirmed.

Law Offices of Morse Mehrban and Morse Mehrban for Plaintiffs and Appellant.

Sheppard, Mullin, Richter & Hampton, P. Craig Cardon and Jay Ramsey for Defendants and Respondents.

Plaintiffs and appellants Greg Rosolowski et al. (collectively, Plaintiffs)[1] appeal a judgment of dismissal following an order sustaining demurrers interposed by defendants and respondents People Media, Inc. and People Media, L.L.C. (collectively, People Media) to Rosolowski's first amended complaint without leave to amend.

The essential issue presented is whether Plaintiffs stated a cause of action for violation of Business and Professions Code section 17529.5, subdivision (a)(2) (section 17529.5(a)(2)), on the theory that People Media sent them unsolicited commercial email advertisements purporting to be *from* "Mature Single," "Mature Singles," "Mature Singles Dating," and "Big Beautiful Women," entities which do not exist and which were not the ones advertising in the emails.[2]

We conclude, as did the trial court, that no cause of action was stated and affirm the judgment of dismissal. We hold a header line in a commercial email advertisement

---

[1]    In addition to Greg Rosolowski, the plaintiffs and appellants are: Jose Estrada, Afredo Garcia, Sr., Jimmy Jaramillo, Mark Lewis, Irelia Marquez, Luis Marquez, Heriberto Parada, Victor Saucedo, Shawn Monroe, Mary Ramirez, Cindy Rodman, Jennifer Rodman, Herbert Henry, Miriah Rodman, Francisco Duarte, Nina Zamora, Luis Alberto Perez, Erlinda Salonga, Gwen Aparente, Rustom Aparente, Jr., Brian Anderson, Georgia Anderson, Michelle Balansag, Shontae Dunn, Alfredo Garcia, Jr., Vanessa Vasquez, Celia Ruiz, Amy Palomino, Mark Bates, Roxanne Balansag, Nadine Balansag, Jeremy Balansag, Franz Balansag, Jessica Lindsay, John Lindsay, Miguel Martinez, Esperanza Matienzo, Michael Matienzo, Barbara Matienzo, Julie Westfall and Matt Boyster.

[2]    Business and Professions Code section 17529.5 states in relevant part at subdivision (a)(2): "It is unlawful for any person or entity to advertise in a commercial e-mail advertisement either sent from California or sent to a California electronic mail address under any of the following circumstances: [¶] . . . [¶] (2) *The e-mail advertisement contains or is accompanied by falsified, misrepresented, or forged header information.* This paragraph does not apply to truthful information used by a third party who has been lawfully authorized by the advertiser to use that information." (Italics added.)

Unless otherwise specified, all further statutory references are to the Business and Professions Code.

2

does not misrepresent the identity of the sender merely because it does not identify the official name of the entity which sent the email, or merely because it does not identify an entity whose domain name is traceable from an online database, *provided* the sender's identity is readily ascertainable from the body of the email, as was the case here.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *Pleadings*.

The gravamen of the allegations in the operative first amended complaint is that People Media advertised its website, SeniorPeopleMeet.com, in unsolicited commercial email advertisements. In the header of the emails, instead of identifying the sender as People Media, the "from" line indicated the sender was "Mature Single," "Mature Singles," "Mature Singles Dating" or "Big Beautiful Women," entities which do not exist and which are not registered as fictitious names. Further, the domains from which these emails originated were not traceable to People Media, and a "WHOIS search would not identify [People Media] as the registrants of the domains from which the emails originated." In so doing, People Media violated section 17529.5(a)(2).

The first amended complaint was filed on behalf of lead plaintiff Rosolowski and 41 individual co-plaintiffs, who collectively sought to be class representatives to represent a larger class. An example of the allegedly offending emails was attached as Exhibit A to the pleading. Exhibit A allegedly was sent to Rosolowski. The other 41 plaintiffs made otherwise identical allegations about People Media's emails and reiterated Rosolowski's claims.

2. *Demurrer*.

People Media demurred, contending Plaintiffs' claims should be dismissed because they were preempted by federal law, specifically, the Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003 (15 U.S.C. § 7701 et seq.) (the CAN-SPAM Act), which preempts all state law claims directed at unsolicited commercial emails that are not materially false or deceptive. The CAN-SPAM act permits only state law claims which assert material falsity or deception, and Plaintiffs failed to allege any material falsity or deception. A "from" line is not materially false or deceptive merely

3

because it does not identify the official name of the entity which sent the email, or merely because it does not identify an entity whose domain name is traceable from a WHOIS database search.**3**

3. *Opposition to demurrer*.

In opposition, Plaintiffs contended their claims were not preempted by the CAN-SPAM Act because the domain names appearing on the "from" lines, such as "Mature Singles," could not be readily traced to People Media by reference to an online database such as WHOIS, and People Media's concealment of its identity in the headers constituted a deception as to a material matter.

4. *Trial court's ruling*.

The trial court sustained People Media's demurrer to the first amended complaint without leave to amend, relying in large part on *Kleffman v. Vonage Holdings Corp.* (2010) 49 Cal.4th 334 (*Kleffman*). It reasoned, the claim as presently pled could escape preemption under the CAN-SPAM Act "if and only if the misrepresentation is material." The fact the emails indicate they originated from "Mature Singles" or other sources, rather than from People Media, was not enough "because the very vagueness of those sender names makes them incapable of being, as a matter of law, materially 'falsified, misrepresented, or forged.' Our Supreme Court's ruling in *Kleffman*[, *supra*,] 49 Ca1.4th 334, is instructive.

"First, it tells us that it is not enough for header information to be 'misleading.' That is not the term used by the legislature in § 17529.5(a)(2): 'the meaning of the word "misrepresented" in section 17529.5(a)(2) takes color from the other words listed in the same provision – "falsified" and "forged" - not from the distinctly different "likely to

---

**3**       WHOIS "is a publically available online database through which users can access information regarding domains, including the registrant's name, address, phone number, and e-mail address. See Definitions, Implementation, and Reporting Requirements Under the CAN–SPAM Act, 70 Fed.Reg. 25,426, 25,446 n.233 (proposed May 12, 2005) (to be codified at 16 C.F.R pt. 316). WHOIS data is compiled by registrars from information submitted by registrants." (*Gordon v. Virtumundo, Inc.* (9th Cir. 2009) 575 F.3d 1040, 1064, fn. 22 (*Gordon*).

mislead" language found in the next provision, section 17529.5, subdivision (a)(3).' 49 Ca1.4th at 343.

"Second, the California Supreme Court reminds us in *Kleffman* that § 17529.5(a)(2) is a criminal statute and 'where reasonable constructions of statute prescribing criminal penalties stand in relative equipoise, courts generally adopt construction more favorable to offender.' *Id*. at 348, citing *People v. Avery* (2002) 27 Ca1.4th 49, 58 (quotation marks omitted).

"Third, the Supreme Court rejected plaintiff's theory that 'random,' 'varied,' 'garbled,' and 'nonsensical' sender domain names violated § 17529.5(a)(2), reasoning instead that their inherent vagueness made them incapable of this vice:

"To begin with, a domain name in a single e-mail that does not identify the sender, the merchant-advertiser, or any other person or entity simply does not make any 'representation' regarding the e-mail's source, either express or implied, within the common understanding of that term, so it cannot be said to constitute 'misrepresented' information within the meaning of section 17529.5(a)(2). Moreover, a contrary conclusion would raise significant preemption problems. . . . [T]he Ninth Circuit has held that a state law requiring an e-mail's 'from' field to include the name of the person or entity who actually sent the e-mail or who hired the sender constitutes 'a content or labeling requirement' that 'is clearly subject to preempt[ion]. [Citations.]' (*Gordon*, *supra*,] 575 F.3d [at p. 1064].) Thus, construing section 17529.5(a)(2) as requiring this kind of information would contravene the rule that courts should, if reasonably possible, construe a statute 'in a manner that avoids any doubt about its [constitutional] validity.' "

The trial court also denied leave to amend, finding "Plaintiffs have already put their cards on the table with the detailed pleading and the representative email attached thereto. A review of the theory of the case and the facts offered in support . . . demonstrates that this is exactly the kind of case which the CAN-SPAM Act was intended to pre-empt. [¶] Congress has the power to pre-empt California consumer law, and it has done so here (at least if California consumer statutes were interpreted in the fashion urged by plaintiffs and their counsel). Plaintiffs have failed to show that they

5

come within the narrow exception to CAN-SPAM's pre-emptive provisions. It is for this reason that this Court exercises its discretion to deny plaintiffs leave to amend. The theory of the case is manifest already and will not improve just by adding more prolixity and surmise to a pleading with more than enough already."

## CONTENTIONS

Plaintiffs contend the operative first amended complaint stated facts sufficient to state a cause of action against People Media.

## DISCUSSION

1. *Standard of appellate review.*

In determining whether a plaintiff has properly stated a claim for relief, "our standard of review is clear: ' "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed." [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff.' [Citations.]" (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126, italics added (*Zelig*).) Our review is de novo. (*Ibid.*)

2. *Overview of section 17529.5 and the CAN–SPAM Act.*

   a. Section 17529.5

In 2003, "the California Legislature passed Senate Bill 186, which imposed broad restrictions on advertising in unsolicited commercial e-mail advertisements sent from or to a computer within California. [Citation.] According to the Legislature's 'findings and declarations,' the bill was adopted to address the 'skyrocket[ing]' costs and 'annoyance[s]' associated with 'spam,' which the statute defines as 'unsolicited

6

commercial e-mail advertisements.' [Citations.] The Legislature concluded that, to effectively regulate the abuses associated with spam, it was necessary to target not only the entities that send unsolicited commercial e-mail advertisements, but also the advertisers whose products and services are promoted in those e-mails." (*Hypertouch, Inc. v. ValueClick, Inc.* (2011) 192 Cal.App.4th 805, 818 (*Hypertouch*).)

Section 17529.5 prohibits certain deceptive practices in commercial email, which practices are enumerated in subdivision (a) as follows:

"(a) It is unlawful for any person or entity to advertise in a commercial e-mail advertisement either sent from California or sent to a California electronic mail address under any of the following circumstances: [¶] (1) The e-mail advertisement contains or is accompanied by a third-party's domain name without the permission of the third party. [¶] (2) The e-mail advertisement contains or is accompanied by falsified, misrepresented, or forged header information. . . . [¶] (3) The e-mail advertisement has a subject line that a person knows would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message."

Section 17529.5, subdivision (b), in turn, contains an enforcement provision that permits the "Attorney General," "an electronic mail service provider" or a "recipient of an unsolicited commercial e-mail advertisement" to "bring an action against a person or entity that violates any provision of this section." (§ 17529.5, subds. (b)(1)(A)(i)-(iii).)

Section 17529.5, subdivision (b) also lists the remedies available under the statute, which include "either or both of the following: [¶] (i) Actual damages. [¶] (ii) Liquidated damages of one thousand dollars ($1,000) for each unsolicited commercial e-mail advertisement transmitted in violation of this section, up to one million dollars ($1,000,000) per incident." (§ 17529.5, subd. (b)(1)(B).) The statute further provides, however, that if the court finds the "defendant established and implemented, with due care, practices and procedures reasonably designed to effectively prevent unsolicited commercial e-mail advertisements that are in violation of this section, the court shall reduce the liquidated damages . . . to a maximum of one hundred dollars ($100) for each

7

unsolicited commercial e-mail advertisement, or a maximum of one hundred thousand dollars ($100,000) per incident." (§ 17529.5, subd. (b)(2).)

b. *The CAN–SPAM Act.*

Shortly after California adopted S.B. 186, Congress enacted the CAN–SPAM Act, which, like S.B. 186, was passed " 'in response to mounting concerns associated with the rapid growth of spam e-mails.' [Citation.] The Act does 'not ban spam outright, but rather provides a code of conduct to regulate commercial e-mail messaging practices. Stated in general terms, the CAN–SPAM Act prohibits such practices as transmitting messages with "deceptive subject headings" or "header information that is materially false or materially misleading." [Citation.] The Act also imposes requirements regarding content, format, and labeling. For instance, unsolicited e-mail messages must include the sender's physical postal address, indicate they are advertisements or solicitations, and notify recipients of their ability to decline further mailings. [Citation].' [Citation.]" (*Hypertouch, supra*, 192 Cal.App.4th at p. 823.)

The CAN–SPAM Act "includes a provision that expressly preempts state statutes that regulate the use of commercial e-mail 'except to the extent that any such statute . . . prohibits falsity or deception in any portion of a commercial [e-mail].' (15 U.S.C., § 7707, subd. (b)(1).) The preemption clause reflects one of the primary goals of the CAN–SPAM Act: to regulate commercial electronic mail "on a nationwide basis." (15 U.S.C., § 7701, subd. (b)(1).) As stated in the Congressional findings accompanying the Act, the federal statute was intended to 'to implement "one national standard" [citation]' regarding the content of commercial e-mail because 'the patchwork of state laws had proven ineffective.' [Citation.]" (*Hypertouch, supra*, 192 Cal.App.4th at p. 824.)

3. *The Kleffman decision.*

In *Kleffman*, as here, the issue presented was "the scope of section 17529.5(a)(2), which makes it 'unlawful . . . to advertise in a commercial e-mail advertisement' that

8

'contains or is accompanied by *falsified, misrepresented, or forged header information.*' " (*Kleffman, supra*, 49 Cal.4th at pp. 339-340, italics added.)[4]

In *Kleffman*, the plaintiff sued under section 17529.5(a)(2), alleging Vonage, by and through its marketing agents, sent him 11 unsolicited e-mail advertisements for its broadband telephone services using " '11 different domain names:  superhugeterm.com; formycompanysite.com; ursunrchcntr.com; urgrtquirkz.com; countryfolkgospel.com; lowdirectsme.com; yearnfrmore.com; openwrldkidz.com; ourgossipfrom.com; specialdlvrguide.com; and struggletailssite.com.'  These '11 different domain names can [all] be traced to a single physical address' in Nevada where Vonage's marketing agent 'is located.'  'None of these domain names provides any indication to the recipient (or its spam filter) that the advertisement is from Vonage.'  Vonage's 'use of these multiple domain names . . . reduces the likelihood that an internet service provider will identify these . . . advertisements as spam and block them before they reach the email inboxes of [plaintiff] and class members.' " (*Kleffman, supra*, 49 Cal.4th at p. 338.)

The discrete issue addressed by the Supreme Court in *Kleffman* was whether sending unsolicited commercial e-mail advertisements from multiple domain names for the purpose of bypassing spam filters constitute falsified, misrepresented, or forged header information within the meaning of section 17529.5(a)(2).  (*Kleffman, supra*, 49 Cal.4th at pp. 337, 339.)  *Kleffman* concluded the use of multiple domain names for the purposes of bypassing spam filters does not violate the statute.

At the outset of its analysis, *Kleffman* noted there was no dispute the domain names used in the challenged emails "actually exist and are technically accurate, literally

---

[4]     *Kleffman* observed, "California statutes do not define either the word 'header' or the phrase 'header information.'  [However,] the federal CAN–SPAM Act, which makes it unlawful to initiate transmission of a commercial e-mail message that contains or is accompanied by 'header information that is materially false or materially misleading' (15 U.S.C. § 7704(a)(1)), defines 'header information' as "the source, destination, and routing information attached to an electronic mail message, including the originating domain name and originating electronic mail address, and any other information that appears in the line identifying, or purporting to identify, a person initiating the message' (15 U.S.C. § 7702(8))."  (*Kleffman, supra*, 49 Cal.4th at p. 340, fn. 5.)

correct, and *fully traceable to Vonage's marketing agents*," and the emails therefore "neither contained nor were accompanied by *'falsified . . . or forged* header information' within the meaning of section 17529.5(a)(2)." (*Kleffman, supra,* 49 Cal.4th at p. 340, italics added.) The parties agreed the issue was whether the e-mails contained or were accompanied by " *'misrepresented . . .* header information' " within the meaning of that subdivision. (*Kleffman, supra*, at p. 340, italics added.) The plaintiff argued the domain names, while not actually false, were "misrepresented" because their random, garbled, and nonsensical nature created a misleading or deceptive impression the emails were all from different entities when in fact they were all from Vonage via a single marketing agent. (*Id*. at pp. 341-342.)

Based on a close reading of the text and legislative history of the statutory language in issue, the Supreme Court rejected the plaintiff' argument that the word "misrepresented" in section 17529.5(a)(2) means " 'misleading' " or " 'likely to mislead.' " (*Kleffman, supra*, 49 Cal.4th at pp. 342-345.) The court found the Legislature did not intend subdivision (a)(2) "generally to prohibit the use of multiple domain names." (*Kleffman, supra,* at p. 345.) Thus, as the plaintiff in *Kleffman* conceded, the mere use of multiple domain names did not " 'in and of itself' " violate subdivision (a)(2). (*Kleffman*, *supra*, at p. 345.)

*Kleffman* further found the use of a domain name in a single e-mail that "does not make clear the identity of either the sender or the merchant-advertiser on whose behalf the e-mail advertisement is sent" is not prohibited by section 17529.5(a)(2). (*Kleffman, supra*, 49 Cal.4th at p. 345.) *Kleffman* determined such use does not in fact make any representation, express or implied, regarding the email's source. (*Id*. at pp. 345-346.) *Kleffman* also concluded that construing the statute otherwise would raise a substantial question with respect to federal preemption. (*Kleffman*, *supra*, at p. 346.)

While expressly declining to define the full scope of the statutory phrase " 'misrepresented . . . header information,' " *Kleffman* concluded: "[A] single e-mail with an accurate and traceable domain name neither contains nor is accompanied by 'misrepresented . . . header information' within the meaning of section 17529.5(a)(2)

10

merely because its domain name is . . . 'random,' 'varied,' 'garbled,' and 'nonsensical' when viewed in conjunction with domain names used in other e-mails. An e-mail with an accurate and traceable domain name makes no *affirmative* representation or statement of fact that is false . . . [and] . . . cannot reasonably be understood to be an implied assertion that the source of that e-mail is different from the source of another e-mail containing a different domain name." (*Kleffman, supra*, 49 Cal.4th at pp. 346-347 & fn. 11.)

4. *The import of an untraceable domain name*.

The instant case presents a different factual scenario than the one addressed by the Supreme Court in *Kleffman* in a critical respect. In *Kleffman*, it was undisputed "the domain names used to send Vonage's e-mail advertisements, and reflected in the header information of these e-mail advertisements, actually exist and are technically accurate, literally correct, and fully traceable to Vonage's marketing agents." (*Kleffman, supra,* 49 Cal.4th at p. 340.)

Here, in contrast, People Media used domain names ("Mature Single," "Mature Singles," "Mature Singles Dating," and "Big Beautiful Women") which were *not traceable* to People Media. On demurrer, accepting these properly pleaded facts as true (*Czajkowski v. Haskell & White, LLP* (2012) 208 Cal.App.4th 166, 173), Plaintiffs alleged: " 'Mature Single,' 'Mature Singles,' 'Mature Singles Dating,' and 'Big Beautiful Women' are not names of existing companies or persons, there are no such entities or persons, and no such entities or persons are registered as fictitious business names. 'Mature Single,' 'Mature Singles,' 'Mature Singles Dating,' and 'Big Beautiful Women' were not the people or entities advertising in the emails. The domains from which these emails originated were not traceable to Defendants. A WHOIS search would not identify Defendants as the registrants of the domains from which the emails originated."

The *Kleffman* court did not specify what is meant by a traceable domain name. It simply stated all 11 emails at issue could be "traced" to a single physical address in Nevada where Vonage's marketing agent was located. (*Kleffman, supra*, 49 Cal.4th at p. 338.) There, it was undisputed "the domain names used to send Vonage's e-mail

11

advertisements, and reflected in the header information of these e-mail advertisements, actually exist[ed] and [were] technically accurate, literally correct, and fully traceable to Vonage's marketing agents." (*Id*. at p. 340.)

a. *The Balsam decision*.

Unlike *Kleffman*, where all of the domain names were accurate and traceable to the sender, in *Balsam v. Trancos, Inc*. (2012) 203 Cal.App.4th 1083 (*Balsam*), "the domain names were *not* traceable to the actual sender. *The header information [was] 'falsified' or 'misrepresented' because Trancos deliberately created it to prevent the recipient from identifying who actually sent the message*. Thus, the nonsensical domain name 'misstepoutcome.com' neither disclose[d] Trancos's name nor [could] it be linked to Trancos using any public database. While, as *Kleffman* states, an e-mail with an accurate and *traceable* domain name makes no affirmative representation or statement of fact that is false, an e-mail with a made-up *and untraceable* domain name affirmatively *and falsely* represents the sender has no connection to Trancos." (*Balsam, supra*, 203 Cal.App.4th at p. 1098, certain italics added.) *Balsam* concluded *Kleffman* should be "read . . . commonsensically . . . to mean that a domain name is 'traceable' to the sender if the recipient of an e-mail could ascertain the sender's identity and physical address through the use of a publicly available database such as WHOIS." (*Balsam, supra,* 203 Cal.App.4th at p. 1098.)

*Balsam* "express[ed] no judgment about other circumstances in which (1) header information might be falsified or misrepresented for purposes of the statute, or (2) *the presence of other information identifying the sender in the body of the e-mail could affect liability under the statute*." (*Balsam, supra,* 203 Cal.App.4th at p. 1101, fn. 17, italics added; see *Asis Internet Services v. Subscriberbase Inc.,* No. 09-3503 SC, 2010 WL 1267763 (N.D.Cal. April 1, 2010) at p. 5 ["A finder of fact may therefore reasonably consider the body of an email or a hyperlinked page in determining whether misrepresentations in the subject lines were actually material"].)

12

b. *Irrespective of the header line, the body of the email was sufficient to enable recipient to identify People Media as the sender.*

Guided by the above, we turn to the facts of the instant case. Although the identity of the sender of the subject email in the "from" line could not be ascertained through the use of a publicly available database such as WHOIS, the body of the email was sufficient to enable the recipient to identify the sender. The email was an advertisement for People Media's website, SeniorPeopleMeet.com. The email provided a hyperlink to the website, and provided an opt-out notice as well as a street address in Seattle, Washington. Plaintiffs cannot plausibly allege that People Media attempted to conceal its identify, as the clear purpose of the emails was to drive traffic to People Media's website. The complaint concedes as much, in that it alleged if a "recipient clicks in an email's body, a link takes him to Defendants' website."

Giving section 17529.5(a)(2) a commonsense reading, as did the *Balsam* court, we conclude a header line does not misrepresent the identity of the sender merely because it does not identify the official name of the entity which sent the email, or merely because it does not identify an entity whose domain name is traceable via a database such as WHOIS, *provided* the sender's identity is readily ascertainable from the body of the email.

5. *Preemption issue not reached.*

Because Plaintiffs failed to state a cause of action under section 17529.5(a)(2), it is unnecessary to address whether such claim would be preempted by the CAN-SPAM Act.

13

## DISPOSITION

The judgment of dismissal is affirmed.  People Media shall recover its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

KLEIN, P. J.

We concur:

KITCHING, J.

ALDRICH, J.

14