Filed 5/6/15  Weinberger v. Freedman Broder et al. CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| ED. WEINBERGER, | B252464 |
| Plaintiff and Appellant. | (Los Angeles County Super. Ct. No. BC492017) |
| v. | |
| FREEDMAN BRODER & COMPANY ACCOUNTANCY CORPORATION et al., | |
| Defendants and Respondents, | |

APPEAL from judgments of the Superior Court of Los Angeles County.  Kevin C. Brazile, Judge.  Reversed.


Johnson & Johnson, James T. Ryan and Ilyssa M. Adler, for Plaintiff and Appellant.


Chapman, Glucksman, Dean, Roeb & Barger, Randall J. Dean, J. Andrew Wright and Ashley H. Verdon, for Defendants and Respondents Freedman Broder & Company Accountancy Corporation and William C. Broder.


Garrett & Tully, Stephen J. Tully and Efren A. Compeán, for Defendants and Respondents Myers & Associates, Inc., and Ronald J. Myers.


_____

Ed. Weinberger appeals from the judgments dismissing his accounting malpractice action after the trial court found that pleading defects concerning the statute of limitations warranted judgment on the pleadings for one set of defendants and an order sustaining without leave to amend the demurrers of another set of defendants. We conclude that Weinberger's pleadings raised a sufficient factual question concerning his alleged delayed discovery of defendants' wrongdoing and therefore reverse the judgments.

## FACTS AND PROCEDURAL HISTORY[1]

Ed. Weinberger is a successful writer, creator, and executive producer of TV shows, including "The Cosby Show," "Taxi," "The Mary Tyler Moore Show," and "The Tonight Show." Weinberger also created the sitcom "Amen," which aired from 1986 through 1991.

In 1989 Weinberger entered an agreement with Carson Productions, Inc. that would pay him $8 million up front for his work on "Amen".[2] The agreement provided that Weinberger would be paid more money in the future—contingent compensation—if "Amen" turned enough of a profit over time to recoup the initial $8 million payment.

William C. Broder of the accounting firm Freedman Broder & Company became Weinberger's accountant and business manager in 1991.[3] Broder was aware of the Carson agreement and one of its duties was to ask for yearly accounting statements from Carson and otherwise keep track of whether the show was turning enough of a profit in

---

[1] In accord with the applicable standard of review, which we discuss *post*, our statement of facts assumes that the complaint's allegations are true. We derive our statement of facts from the operative second amended complaint.

[2] The Carson in Carson Productions was the late Johnny Carson, and we will refer to this entity as Carson. The complaint does not allege Carson's role in connection with "Amen", but we assume it was the show's production company.

[3] We will refer to William Broder and his accounting firm collectively as Broder. We will refer to Broder and Myers collectively as respondents.

syndication to recoup Weinberger's initial $8 million payment and trigger his right to receive contingent compensation.

In 1995, both Carson and Broder told Weinberger that he should not expect to receive contingent compensation from "Amen" because his advance payment had been so large, the show's production costs had been high, and the show enjoyed only mediocre success.

The last accounting statement Carson sent Broder was for the period ending June 30, 1998. Broder learned, but never informed Weinberger, that he was a little more than $1.45 million away from recouping his advance payment. Carson never sent another statement after that time. Sometime before 1999, Broder decided to stop asking Carson for accounting statements because Broder believed if it never learned about Weinberger's recoupment status on "Amen" the statutes of limitations for claims against Carson would not be triggered. Broder never advised Weinberger that he needed to monitor his contingent compensation status or hire someone else to do it for him.

In 2002, Broder asked Weinberger to sign a liability release form for actions taken by Broder. The contents of that form are not alleged. Also in 2002, Broder sent to storage all files concerning Weinberger's right to contingent compensation for "Amen". Broder's compensation came from a percentage of Weinberger's earnings. In 2004, Broder told Weinberger it would no longer represent him because Weinberger was not generating enough income.

In 2004, Ronald J. Myers of the accounting firm Myers & Associates, Inc., took over for Broder. Myers received all of Broder's files concerning Weinberger, including all information relating to Weinberger's contingent compensation rights from "Amen". Myers also learned about the "Amen" rights from discussions with Broder. However, Weinberger also alleged that Broder intentionally failed to advise Myers that Broder had not checked on the status of Weinberger's contingent compensation rights for the past five years. Myers never monitored Weinberger's rights. In May 2008, Myers terminated its services with Weinberger, and Weinberger does not allege that anyone else handled his business and financial matters after that time.

3

Sometime in 2011, Weinberger asked Carson to provide an "Amen" accounting statement. When Carson refused, Weinberger initiated an arbitration proceeding against Carson in May 2011. One month later, Weinberger learned that his $8 million advance had been recouped and that Carson owed him a significant amount of contingent compensation. In June 2012, Carson finally provided information showing that the advance had been recouped, and contingent compensation was owed, as of 1999. Because the four-year breach of contract statute of limitations barred any claims before 2007, Carson settled the dispute by paying Weinberger the amounts owed after that time.

On September 12, 2012, Weinberger sued Broder and Myers for malpractice, fraud, and breach of fiduciary duty. Myers demurred on the grounds that Weinberger did not adequately allege causes of action for fraud and breach of fiduciary duty. Broder demurred on the grounds that all three causes of action against it were barred by the statute of limitations and that the fraud cause of action did not allege the required elements with specificity.

In response, Weinberger filed a first amended complaint. Myers again demurred to the fraud and breach of fiduciary duty causes of action, while Broder demurred again on statute of limitations grounds and the failure to plead fraud with specificity. The trial court sustained without leave to amend Myers's demurrer to the fraud cause of action in the first amended complaint, but overruled its demurrer to the fiduciary duty cause of action. It sustained with leave to amend Broder's demurrers to all causes of action, finding that Weinberger had failed to allege facts explaining his delayed discovery of his claims.

After Weinberger filed his second amended complaint, which we described above, Broder demurred again, contending that: (1) as to all three causes of action against it, Weinberger still failed to properly allege his delayed discovery of his causes of action; and (2) as to the fraudulent concealment cause of action, he failed to allege that Broder knew Weinberger had recouped his initial advance.

Weinberger opposed the demurrer, contending that he sufficiently alleged both delayed discovery and equitable estoppel to asset the statute of limitations. The trial

4

court rejected both contentions. As to delayed discovery, the trial court found that Weinberger could have discovered his contingent compensation status as far back as 1999 when Carson stopped providing accounting statements, but did nothing until 2011. As to equitable estoppel, the trial court found the doctrine inapplicable because it was based on the same conduct alleged as the basis of Weinberger's causes of action and did not deter Weinberger from filing suit. The trial court then entered judgment for Broder.[4]

Two months later, Myers brought a motion for judgment on the pleadings on the same statute of limitations grounds. That motion was granted and judgment was entered for Myers.

## STANDARD OF REVIEW

In reviewing a judgment of dismissal after a demurrer is sustained without leave to amend, we must assume the truth of all facts properly pleaded by the plaintiff-appellant. Regardless of the label attached to the cause of action, we must examine the complaint's factual allegations to determine whether they state a cause of action on any available legal theory. (*Black v. Department of Mental Health* (2000) 83 Cal.App.4th 739, 745.)

We will not, however, assume the truth of contentions, deductions, or conclusions of fact or law and may disregard allegations that are contrary to the law or to a fact which may be judicially noticed. When a ground for objection to a complaint, such as the statute of limitations, appears on its face or from matters of which the court may or must take judicial notice, a demurrer on that ground is proper. (Code Civ. Proc., § 430.30, subd. (a); *Black v. Department of Mental Health, supra*, 83 Cal.App.4th at p. 745.) We may take judicial notice of the records of a California court. (Evid. Code, § 452,

---

**4** The trial court did not reach Broder's alternative contention that the intentional fraud cause of action was inadequately pled. On appeal Broder did not raise this as an alternative ground for affirming the trial court's order as to that cause of action. As a result we do not reach it and our reversal is based solely on the statute of limitations issue. Likewise, Weinberger has not raised as an issue on appeal whether the trial court erred by sustaining without leave to amend Myers's demurrer to the fraud cause of action in the first amended complaint. As a result, our reversal does not apply to that cause of action.

subd. (d).) We must take judicial notice of the decisional and statutory law of California and the United States. (Evid. Code, § 451, subd. (a).)

In order for a demurrer to prevail on statute of limitations grounds, the defect must clearly and affirmatively appear on the face of the complaint; it is not enough that the complaint shows merely that the action may be barred. (*E-Fab, Inc. v. Accountants, Inc. Services* (2007) 153 Cal.App.4th 1308, 1315-1316 (*E-Fab*).) A statute of limitations defense is normally a question of fact. (*Id.* at p. 1320.) There are no hard and fast rules for determining what facts or circumstances will trigger a potential plaintiff's duty of inquiry because it is a question of fact. It becomes a question of law only when reasonable minds can draw but one conclusion from the pleadings. (*Ibid.*)

A motion for judgment on the pleadings is effectively the same as a demurrer and we apply the same standard of review to the judgment for Myers. (*Arce v. Childrens Hospital of Los Angeles* (2012) 211 Cal.App.4th 1455, 1483, fn. 16.)

## DISCUSSION

The two-year statute of limitations for accountant malpractice (Code Civ. Proc., § 339, subd. (1)), applies to all of Weinberger's causes of action. This includes his breach of fiduciary duty claims against respondents and his fraudulent concealment claim against Broder, because they are based on the same facts and involve the same breach of duty as his negligence causes of action. (*Sahadi v. Scheaffer* (2007) 155 Cal.App.4th 704, 715; *Curtis v. Kellogg & Andelson* (1999) 73 Cal.App.4th 492, 503.) Because Broder and Myers stopped working for Weinberger in, respectively, 2004 and 2008, the statute of limitations would have ordinarily run, respectively, sometime in 2006 and 2010, well before Weinberger filed his complaint in 2012.

Weinberger contends his action was timely under the delayed discovery rule, which postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, his cause of action. (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 807 (*Fox*).) A plaintiff has reason to discover a cause of action when he has reason at least to suspect a factual basis for its generic elements of wrongdoing, causation, and

6

harm. (*Ibid.*) Once that occurs, a potential plaintiff must conduct a reasonable investigation of all potential causes of his injury. (*Id.* at pp. 808-809.) Plaintiffs are charged with presumptive knowledge of an injury if they have information or circumstances to put them on inquiry or if they have the opportunity to obtain knowledge from sources available to them. (*Id.* at p. 808.)

This placed on Weinberger the burden of specifically pleading both the time and manner of discovery and the inability to have made an earlier discovery despite reasonable diligence. Conclusory allegations of delayed discovery are inadequate. (*Fox, supra*, 35 Cal.4th at p. 808.)

Respondents contend the discovery rule is inapplicable for several reasons: (1) Weinberger's reliance on Broder's 1995 prediction that contingent compensation would likely never come due is belied by his allegations that he expected Broder to continue monitoring its status and hired Myers to do the same; (2) his injuries occurred and became apparent in 1999, when contingent compensation was first due and Carson stopped providing accounting statements; (3) even if Weinberger cannot be charged with knowledge that the accounting statements had stopped, he should have made inquiries when his professional relationships with Broder and Myers ended in 2004 and 2008, respectively; (4) his allegation that he was unable to discover his claims until Carson denied his 2011 request for an accounting, leading to his alleged 2012 discovery of the facts, does not explain why he waited so long after Myers quit in 2008; and (5) once that happened Weinberger assumed control of his own affairs and, as his allegations show, had he promptly asked Carson for a statement at that time would have learned the true facts no later than 2009.

Weinberger contends that his damages did not occur until 2011, when Carson tried to stonewall his inquiries into the status of his "Amen" contingent compensation. He also contends that he was entitled to rely on respondents, who occupied a fiduciary or confidential relationship and were hired to give professional advice concerning, among others, the status of his contingent compensation rights. Broder's statement that such compensation would likely not be realized, followed by its alleged decision to play

7

ostrich and deliberately choose to ignore the issue, lulled him into non-action, he contends, while Myers continued this error by failing to look into the matter as well.

We disagree with Weinberger that he was not damaged until 2011 when Carson first balked at revealing information about or paying the contingent compensation he was owed since 1999. Instead, we agree with respondents that Weinberger's damages in fact began in 1999 when his contingent compensation rights accrued.

However, a plaintiff's inability to discover a cause of action may occur "when it is particularly difficult for the plaintiff to observe or understand the breach of duty, *or when the injury itself (or its cause) is hidden or beyond what the ordinary person could be expected to understand.*" (*Shively v. Bozanich* (2003) 31 Cal.4th 1230, 1248, italics added.) Where a professional, such as a doctor or lawyer, commits malpractice, "delayed accrual is justified on the basis that the expertise expected of professionals is beyond the ability of laypersons to evaluate, and on the further basis that it may be impossible for a layperson to even observe the professional's application of his expertise." (*Ibid.*)

On its face the second amended complaint falls into this category. According to Weinberger, Broder was supposed to keep track of his contingent compensation rights but failed to do so, consciously choosing to turn a blind eye when Carson stopped sending annual accounting statements after 1998. Broder's silence after its 1995 assertion that Weinberger was unlikely to ever receive contingent compensation from "Amen" raises a factual question whether Weinberger was entitled to rely on Broder's silence, including Broder's failure to properly advise him when it quit and Myers took over in 2004. The same is true as to Myers, which allegedly remained silent about its failure to monitor the contingent compensation issue despite having possession of Broder's files on the matter. We therefore view this as a case where the fact of injury was hidden due to the alleged failings of Weinberger's accountants during the consecutive periods during which they represented him.

Respondents point to the trial court's finding that Weinberger "sat on his hands" and did nothing after Carson stopped sending accounting statements from 1999 on to show that he should have acted much sooner. The basis of this finding is Weinberger's

8

allegation that neither he nor defendants received accounting statements after 1998. As respondents point out, Weinberger does not allege that those statements were sent to only them. We recognize this creates an ambiguity as to whether Weinberger received statements up until 1999, and that if he did, the failure to receive them thereafter might have triggered a duty of inquiry on his part. However, the allegation does not conclusively foreclose the possibility that: Weinberger in fact never received any statements, and they were sent to only his accountants; or that even if he received them through 1998, their contents were too complex or confusing and required professional interpretation; and whether, in any event, his state of mind concerning Broder's representations and respondents' silence justified his inaction because he trusted respondents to look after his interests.

We also acknowledge the logic of respondents' contention that once Weinberger began handling his own affairs in 2008 he was in a position to determine the facts at that time simply by asking Carson for an accounting statement. As Weinberger's allegations show, once he did that he was able to determine the facts within a year. Accordingly, had he done so in 2008, he would have learned the facts by 2009, which falls outside the statute of limitations.

At bottom, however, this is nothing more than an inference that respondents ask us to draw to fill in the blanks from Weinberger's allegations. What triggered Weinberger's decision to ask Carson for an accounting statement in 2011 and whether anything that transpired after Myers stopped working for him in 2008 go to Weinberger's state of mind at that time. This ambiguity in the pleadings does not clearly and affirmatively show that the discovery rule does not apply here. Instead, it suggests only that the action may be barred and therefore raises a factual question that must be resolved through the litigation process. We therefore hold that Weinberger alleged sufficient facts to invoke the

9

discovery rule and that the trial court erred by sustaining Broder's demurrer and Myers's motion for judgment on the pleadings.[5]

## DISPOSITION

The judgment dismissing the complaint as to Broder and the judgment on the pleadings for Myers are reversed.

The trial court is directed to enter new orders:  (1) overruling Broder's demurrers as to all causes of action against it; and (2) denying the motion for judgment on the pleadings by Myers as to the malpractice and breach of fiduciary duty causes of action. The fraud cause of action against Myers remains dismissed.  Appellant shall recover his appellate costs.


RUBIN, ACTING P. J.

WE CONCUR:


FLIER, J.


GRIMES, J.

---

[5]     Because we hold that the discovery rule applies, we need not address Weinberger's contentions that he was held to a lower standard of inquiry because respondents were his fiduciaries and that respondents were equitably estopped from invoking the statute of limitations defense.