Filed 6/20/19

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| GLENN L. MOSS et al., Plaintiffs and Appellants, v. DALE DUNCAN et al., Defendants and Respondents. | D075101 (Super. Ct. No. RIC1510391) |


APPEAL from a judgment of the Superior Court of Riverside County, John W. Vineyard, Judge. Reversed with directions.

Law Office of Michael Geller and Michael S. Geller, for Plaintiffs and Appellants.

Garrett & Tully, Stephen J. Tully and Brian W. Ludeke, for Defendants and Respondents.

Plaintiffs and appellants Glenn L. Moss, Jeri C. Moss, and Moss Bros. Auto Group, Inc. (collectively, Moss)[1] filed a complaint against defendants and respondents Dale Duncan, CPA, and Rogers, Clem & Company, an accountancy organization (collectively, Duncan), alleging professional negligence and unfair business practices. The trial court ruled that these claims were barred by the statute of limitations, resulting in a judgment in favor of defendants. The Moss plaintiffs appeal. We agree with Moss that the statute of limitations did not begin to run until Moss settled the tax deficiency claim with the Franchise Tax Board (FTB), and the complaint was therefore timely.

BACKGROUND

Moss hired Duncan to perform accounting and tax services, including preparation of its business tax returns. Glenn owned several car dealerships and negotiated the purchase of four new dealerships in 2005 through 2006. Duncan and other professionals advised Glenn during these negotiations. Glenn needed a loan to complete the purchases. To accomplish his goal, he created a new corporation, Moss Auto, as the borrower. Glenn was the sole shareholder of Moss Auto and of the four new dealerships. A bank extended a multi-million dollar loan to Moss Auto and the money was distributed to the four dealerships. On Duncan's advice, Moss Auto accounted for a loan of the entire multi-million dollar proceeds to Glenn, its sole shareholder. The dealerships made payments to Moss Auto for loan repayments but these payments were accounted for as

---

[1] When individual reference is necessary, Glenn and Jeri Moss will be referred to by their first names and Moss Bros. Auto Group will be referred to as Moss Auto. Glenn and Jeri are married and file joint tax returns. Jeri was therefore obligated for the eventual tax deficiency.

management fees instead of loan repayments. Moss's accountants kept records in accordance with Duncan's advice on the loan to Glenn and the management fees from the dealerships to Moss Auto. Duncan prepared tax returns for Moss in 2006 that were consistent with his advice and Moss's records.

The FTB notified Moss in May 2010 that it was auditing Moss's 2006 tax returns regarding the loan to Glenn. Duncan responded to the FTB's concerns about the loan, but the FTB notified Moss on August 5, 2010, that it rejected Duncan's position and considered the transaction to be a taxable distribution from Moss Auto to Glenn. Glenn therefore owed more than $1 million in taxes to the FTB. After the August 5 letter, Moss hired other professionals to contest the tax issue.

The FTB issued a Notice of Proposed Assessment on April 13, 2011, stating a proposed assessment on Glenn of $1.2 million in taxes for the distribution from Moss Auto to Glenn. After more than three years of dispute and negotiation with the FTB, Moss decided to settle rather than continuing to contest the deficiency. Moss reached a compromise settlement with the FTB on May 19, 2015, and Glenn paid his tax liability to the FTB. Moss spent about $50,000 on other professionals to resolve this issue.

Moss filed a complaint against Duncan on August 28, 2015, alleging professional negligence, false advertising, and unfair business practices. Duncan moved for summary judgment or summary adjudication. The trial court found that the claims for professional negligence and unfair business practices were barred by the statute of limitations. The trial court concluded that Moss's claims were based on erroneous tax advice given in 2006 about how to structure the deal. The court ruled the two-year statute of limitation

3

commenced upon discovery of the accounting error in 2010 or, at the latest, when the FTB issued its proposed tax assessment in 2011. The limitations period therefore expired before this case was filed in 2015. The trial court granted summary adjudication for Duncan on his causes of action for professional negligence and unfair business practice.

Moss dismissed its claim for false advertising without prejudice. Judgment was entered on September 29, 2017, and Moss filed a timely notice of appeal.

DISCUSSION

Moss contends that the trial court erred in determining that the statute of limitations for accounting negligence commenced in or before April 2011. Moss contends, and we agree, that the statute began to run when Moss settled the tax deficiency with the FTB on May 19, 2015, which was the date when actual injury was determined, pursuant to *International Engine Parts, Inc. v. Feddersen & Co*. (1995) 9 Cal.4th 606, 621–622 (*Feddersen*). The settlement was within two years before the complaint was filed on August 28, 2015.

*Standard of Review*

Commencement of the statute of limitations is usually a factual question, but can be resolved as a matter of law when, as here, the material facts are not disputed. (*Choi v. Sagemark Consulting* (2017) 18 Cal.App.5th 308, 323–324 (*Choi*); *Sahadi v. Scheaffer* (2007) 155 Cal.App.4th 704, 714 (*Sahadi*).) We review the ruling on summary judgment independently, as a matter of law, because of the lack of factual dispute. (*Jackpot Harvesting Co., Inc. v. Superior Court* (2018) 26 Cal.App.5th 125, 142.)

4

Duncan asserts additional claims and contends that we can affirm the ruling on any ground. (*Carnes v. Superior Court* (2005) 126 Cal.App.4th 688, 694; *California School of Culinary Arts v. Lujan* (2003) 112 Cal.App.4th 16, 22.) We decline to address these issues because the trial court did not consider these issues and did not determine whether the facts were disputed. (See Code Civ. Proc. § 437c, subd. (m)(2) [additional briefing must be permitted to rule on grounds which trial court did not reach].)

The parties agree that the statute of limitations for a claim of an accountant's negligence is two years under Code of Civil Procedure 339, subdivision (1). (*Feddersen*, *supra*, 9 Cal.4th at p. 608; *Choi*, *supra*, 18 Cal.App.5th at p. 315.) They also agree that the two-year statute of limitations applies to the unfair business practice claim. The limitations period for an unfair business claim is generally four years (Bus. & Prof. Code, § 17208), but "under California's 'primary right' theory of code pleading, we determine the causes of action alleged in the complaint 'based on the injury to the plaintiff, not on the legal theory or theories advanced to characterize it.' [Citations.] 'Thus, if a plaintiff states several purported causes of action which allege an invasion of the same primary right he has actually stated only one cause of action . . . .' " (*Choi*, at p. 335; *Curtis v. Kellogg & Andelson* (1999) 73 Cal.App.4th 492, 503 (*Curtis*).) The two-year limitations period applies to both causes of action for professional negligence and for unfair business practices because both are based on the alleged professional negligence of Duncan. (*Choi*, at pp. 335–336; *Curtis*, at p. 503.) Thus, Moss's claims are barred if the statute of limitations commenced more than two years before the complaint was filed.

*Professional Negligence by Accountants*

The statute of limitations in professional negligence cases starts to run when all the elements are complete. The last element to be determined may be the actual injury caused by the negligence. (*Feddersen*, *supra*, 9 Cal.4th at p. 608.) The California Supreme Court in *Feddersen* resolved the " 'narrow,' but recurring, issue as to when *actual injury*, caused by an accountant's negligent filing of tax returns, occurs so as to commence the running of the two-year statute of limitations period." (*Ibid*.) The court held that actual injury occurred when the tax deficiency was fixed by a final notice of deficiency assessment by the taxing agency, or by acquiescence in the deficiency by the taxpayer. (*Id.* at p. 622; see p. 613 [agreement to pay deficiency equivalent to final determination by agency].) The agency first notifies the taxpayer of a potential tax deficiency. This initial notice provides "*proposed* findings that are subject to negotiation prior to any determination of tax deficiency." (*Id*. at p. 612.) The *Feddersen* court stated, "The deficiency assessment serves as a *finalization* of the audit process and the commencement of actual injury because it is the trigger that allows the IRS to collect amounts due and the point at which the accountant's alleged negligence has caused harm to the taxpayer." (*Id*. at p. 617.) The court explained, "The use of the date of deficiency assessment to mark the date of actual injury in accountant malpractice cases provides the parties with a bright line that . . . provides certainty in terms of the statute's application. . . . [U]niformity in application serves a more important function when interpreting statutes of limitation than does the identification of the precise point at which some harm might be said to have occurred, even if negative collateral consequences

6

might arise from the *tentative* assessment of additional tax liability." (*Id.* at pp. 621–622.)

*Feddersen* involved federal taxes but its rule applies as well to state taxes assessed by the FTB. "[O]ur courts view federal decisions construing comparable laws as persuasive authority in interpreting state income tax statutes." (*Sahadi*, *supra*, 155 Cal.App.4th at p. 733.) The California tax law largely incorporates the Internal Revenue Code. (*Ibid.*) The FTB, like the IRS, has a " ' "pay now, litigate later" ' " rule that requires the taxpayer to pay the contested tax before judicial review of its validity. (*Id.* at p. 734.)

The trial court here, like the appellate court in *Feddersen*, relied on the date of discovery of some error to commence the statute of limitations instead of the date of final assessment of actual injury as required by the Supreme Court in *Feddersen*. Specifically contrary to *Feddersen*, the trial court said the FTB's notice of proposed assessment was the latest triggering event to commence the limitations period. It concluded that the crux of Moss's malpractice claim was Duncan's erroneous tax advice in 2006 and distinguished *Feddersen* as applicable only to preparation of tax returns and not to tax advice that informed the preparation of those returns. The court said putting the wrong number on a tax return was an example of error in preparation of a tax return that did not entail tax advice. On appeal, Duncan similarly contends that *Feddersen* was limited to preparation of tax returns and did not apply to the tax advice that resulted in deficient returns.

7

*Feddersen* does not discuss, much less depend upon, the nature of the accountant's negligence or any difference between preparation of tax returns and tax advice that results in the preparation of tax returns. The Supreme Court focused exclusively on the "narrow" question of the date of "*actual injury*" in the case of tax liability. (*Feddersen*, *supra*, 9 Cal.4th at p. 608.) The court discussed the evolution and development of the commencement of the statute of limitations in cases of professional negligence. (*Id*. at pp. 613–620.) The California Supreme Court considered various times when damages due to a tax deficiency occurred: when the taxpayer first learned there could be an error on his tax filing; when the taxpayer incurred costs in responding to potential liability; and when the tax deficiency was assessed against the taxpayer. (*Id*. at pp. 610–611.) The court also reviewed the IRS procedures in determining a potential deficiency, negotiating and contesting the deficiency, and issuing a final assessment of deficiency. Once the IRS completed its review and negotiations, it issued a final notice of assessment. At that point, the tax was due and the government could start collections within 90 days. The taxpayer could pay the tax and seek a refund in federal tax court, or could acquiesce to the agency's determination and pay the amount due. (*Feddersen*, *supra*, 9 Cal.4th at pp. 612–613.) Determinations before the final assessment were proposed or potential only. The final notice of assessment was the date of actual injury. (*Id*. at p. 617.) At that point, actual injury has occurred and the statute of limitations commences. (*Id*. at p. 622.)

The court further explained that the delayed accrual conserved judicial proceedings by not requiring the taxpayer to pursue the malpractice claim at the same time as contesting the audit results with the agency. It also permitted the taxpayer to use

8

his accountant to assist during the determination phase. Further, it provided certainty for all similar accounting malpractice cases, promoting uniform application of the rules. (*Feddersen*, *supra*, 9 Cal.4th at pp. 620–621; see also *Sahadi*, *supra*, 155 Cal.App.4th at pp. 725–726.) Duncan argues the objectives and policies of *Feddersen* are not applicable here because Moss disavowed Duncan's tax law interpretation during the audit. Uniformity of application, however, suffers when the courts must determine in each case whether and at what time a taxpayer alleges his accountant was negligent. The *Sahadi* court discussed the anomalies that would occur if claims were treated differently based on the taxpayer's suspicion of negligence. (*Sahadi*, at p. 726.)

*Sahadi* followed *Feddersen* in finding that the statute of limitations commenced when the IRS administrative appeal process concluded. (*Sahadi*, *supra*, 155 Cal.App.4th at pp. 708, 727–728.) Duncan contends that "*Sahadi* solely involved negligent tax return preparation and representation during an audit." The defendant accountants in *Sahadi* prepared and filed the plaintiff taxpayer's tax returns and amended returns. (*Id*. at pp. 708–709.) The error was "the tax treatment of a complicated transaction" in which the taxpayers transferred an ownership interest to their lender through a deed in lieu of foreclosure. (*Id*. at p. 709.) It would seem that the accountants were responsible for determining the tax treatment that resulted in the audit, as accountants are hired to give tax advice, not to rotely fill out income tax forms. In any event, nothing in either *Sahadi* or *Feddersen* limits the *Feddersen* rule to tax return preparation only without the corresponding tax advice.

9

The appellate court in *Curtis v. Kellogg & Andelson* applied *Feddersen* to a case of negligent tax advice. The defendant accounting firm "*gave tax advice* to [the plaintiffs regarding expenses] . . . . and prepared tax returns listing those expenses on the Corporation's income tax returns for the relevant years." (*Curtis*, *supra*, 73 Cal.App.4th at p. 495, emphasis added.) The *Curtis* court followed *Feddersen* in finding that the statute of limitations accrued when the taxing agency assessed a tax deficiency. (*Id.* at pp. 499–500.) Duncan cites the section of the case that analyzed tolling of the statute of limitations while the defendants challenged the tax liability through the tax court. The court found no tolling throughout the judicial proceedings, but that ruling is not applicable here. Moss paid the tax deficiency instead of contesting the matter through the tax court.

*Feddersen* was distinguished in *Van Dyke v. Dunker & Aced* (1996) 46 Cal.App.4th 446, 454–455, because in that case there was no negotiation or litigation of the tax liability with the taxing agency. The accountants gave erroneous tax advice about a land donation but advised the taxpayer of the error before preparing the first tax return that reflected the donation. The taxpayer paid the full amount due and suffered actual injury then, the year after the donation. (*Id.* at p. 452.) The propriety of the tax advice and resulting injury was not contingent on the outcome of an IRS audit. (*Id.* at p. 455.) The court explained that under *Feddersen*, "if the existence or effect of a professional's error depends on a litigated or negotiated determination's outcome, 'actual injury' occurs only when that determination is made." (*Van Dyke*, at pp. 454–455.) The accountant found the error and the taxpayer paid the excess without any involvement of or

10

determination by the IRS. There was a later audit in *Van Dyke*, but it was not based on the erroneous tax advice given to the taxpayer and the payment of the excess already made. The later audit did not address the defendant accountant's erroneous advice. (*Ibid.*)

The actual injury in *Feddersen* and here depended upon the outcome of a contested and negotiated disposition with the tax agency. (*Feddersen*, *supra*, 9 Cal.4th at p. 620; see *Van Dyke*, *supra*, 46 Cal.App.4th at pp. 455–456.) Moss knew of potential liability by 2010, and incurred expenses challenging that liability, but the actual injury—the final assessment by the FTB—occurred when Moss and the FTB agreed on a settlement and Moss paid the final amount due. " '[A]ctual injury' represents a legal term of art which recognizes that an inchoate or potential injury cannot give rise to a professional malpractice action until there has been an actual determination that the accountant's alleged negligence is related to the deficiency assessment. Once the audit process is finalized, however, the harm caused by the accountant's negligence is no longer contingent and the taxpayer's cause of action in tort for alleged malpractice against the accountant accrues under [Code of Civil Procedure] section 339, subdivision 1." (*Feddersen*, at pp. 619–620.) The trial court erred when it found that the statute of limitations commenced upon the notice of proposed assessment by the FTB. (*Ibid.*; *Curtis*, *supra*, 73 Cal.App.4th at pp. 499–500; *Van Dyke*, at pp. 454–456.)

11

Legal malpractice cases such as *Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, 763 and *Hensley v. Caietti* (1993) 13 Cal.App.4th 1165 are not applicable or helpful because legal malpractice actions have a different statute of limitations created by the Legislature. That separate statute specifies that the limitations period commences "one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission . . . ." (Code Civ. Proc., § 340.6, subd. (a); *Sahadi*, *supra*, 155 Cal.App.4th at pp. 728–730.) Similarly, a claim of malpractice by financial advisors is not subject to the bright-line rule established for accounting malpractice. (*Choi*, *supra*, 18 Cal.App.5th at p. 325.) Other accountant malpractice cases are not applicable because the actual injury in those cases was not determined after dispute and negotiation with another entity. (See *Apple Valley Unified School Dist. v. Vavrinek, Trine, Day & Co*. (2002) 98 Cal.App.4th 934, 937 [accountant misrepresentations about an internal audit that resulted in damages not subject to determination by agency after contesting and negotiation]; *Czajkowski v. Haskell and White* (2012) 208 Cal.App.4th 166, 170–171 [failure to discover employee fraud due to negligent auditing].)

*Feddersen* provides binding authority on this issue. We conclude that Moss's cause of action for accountant malpractice accrued when Moss reached a settlement with the FTB on the amount of tax deficiency. That occurred within six months before Moss filed the complaint. Accordingly, we reverse the trial court's grant of summary adjudication that was based on the statute of limitations.

12

DISPOSITION

We reverse the judgment and remand to the trial court with directions to vacate its order granting summary adjudication and to enter an order denying Duncan's motion for summary judgment or, in the alternative, adjudication. Costs on appeal awarded to plaintiffs and appellants Glenn Moss, Jeri Moss and Moss Auto Group, Inc.

BENKE, Acting P. J.

WE CONCUR:

AARON, J.

DATO, J.