Filed 5/7/25  Wright v. Canadian Dental Association CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| ROBERT S. WRIGHT, | |
| Plaintiff and Appellant, | G062642 |
| v. | (Super. Ct. No. 30-2022-01241461) |
| CANADIAN DENTAL ASSOCIATION et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from judgments of the Superior Court of Orange County, William D. Claster, Judge. Affirmed.

Robert S. Wright, in pro. per., for Plaintiff and Appellant.

Kaufman Borgeest and Ryan, Jeffrey S. Whittington and Paige M. Waldberg for Defendant and Respondent Canadian Dental Association.

Kjar, McKenna & Stockalper, James J. Kjar and Alexandra C. Martino for Defendant and Respondent Borden Ladner Gervais.

Plaintiff Robert S. Wright appeals from the judgments entered in favor of defendants Canadian Dental Association (CDA) and law firm Borden Ladner Gervais, LLP (Borden) (collectively referred to as defendants) after the trial court sustained defendants' demurrers to Wright's operative complaint without leave to amend. For the reasons we explain, we agree with the trial court each of Wright's claims against either or both defendants is barred by the applicable statute of limitations. We therefore affirm.

SUMMARY OF ALLEGATIONS AND PROCEDURAL BACKGROUND[1]

I.

WRIGHT PURCHASES A LONG-TERM DISABILITY POLICY FROM CDA IN 1992 AND SUFFERS A SKIING ACCIDENT IN 1993

"This matter arises from Wright's attempt to collect benefits allegedly due under a long-term disability policy ('Policy') following his skiing accident in December 1993. Prior to this accident, Wright, a Canadian citizen, had practiced general dentistry in British Columbia since 1978. [Citation.]

---

[1] In the minute order dated August 5, 2022 sustaining CDA's demurrer to Wright's original complaint with leave to amend, the trial court provided an accurate summary of the allegations of Wright's lengthy complaint. In this background section, we quote portions of the trial court's August 5, 2022 summary as to allegations Wright realleged in the first amended complaint at issue in this appeal. (See *Vance v. Villa Park Mobilehome Estates* (1995) 36 Cal.App.4th 698, 709 [on demurrer, allegations of operative complaint are accepted as true except for those allegations that are contradicted by exhibits to the complaint or by matters of which judicial notice may be taken]; *Deveny v. Entropin, Inc.* (2006) 139 Cal.App.4th 408, 425 [court may take judicial notice of prior pleading and disregard inconsistent allegations in operative pleading unless plaintiff provides a satisfactory explanation for the change].)

"CDA is a [not-for-]profit corporation serving members of the dental profession in Canada. [Citation.] Wright further alleges CDA is an alter ego of since-dismissed defendant CDSPI [Canadian Dental Services Plan, Inc.] . . . .

"Wright had been a member of CDA since 1978, the same year he started his dentistry practice. [Citation.] Wright alleges he relied on CDA and CDSPI for financial planning, investments, insurance, and similar advice, and that they held themselves out as insurance brokers and financial planners for member dentists. [Citation.]

"Wright purchased the Policy through CDSPI. [Citation.] It had an effective date of January 1, 1992. [Citation.] In December 1993, he was injured in a skiing accident. He contends the accident left him totally disabled for the career of general dentistry, but he believed he could retrain as a dental specialist and work mainly as an educator with limited hours at a dental practice."

## II.

### THE CLAIMS PROCESS, WRIGHT'S LAWSUIT IN BRITISH COLUMBIA, AND WRIGHT'S LAWSUIT IN LOS ANGELES SUPERIOR COURT

"In late January 1994, about a month after the accident, Wright contacted CDSPI to inquire about filing a claim under the Policy. [Citation.] CDSPI purportedly wrongly informed him that under the terms of his policy, he would have to wait until three months after he sold his practice and stopped practicing general dentistry to file a claim. [Citation.] Wright originally arranged for the sale of his practice in July 1994, but the sale fell through. He was unable to sell the practice and move to California until March 1995. [Citation.] Three months after he sold the practice, Wright

3

requested a claim submission form from CDSPI. The claim submission package did not arrive until October 1995."

Sun Life paid some benefits intermittently. Wright retained an attorney and in July 1998, "Wright filed an insurance coverage suit in the Supreme Court of British Columbia. Sun Life resumed payments, and Wright recovered some, but not all, of the claimed arrearage. [Citation.] Wright contends this partial denial of benefits was wrongful, and that CDA conspired with [CDSPI] in the denial. [Citation.]

"Then, in November 2001, Sun Life terminated benefits under the policy. It concluded Wright had returned to his former regular occupation, i.e., general dentistry. Wright alleges benefits were terminated without any specific supporting explanation, and that he was never asked to provide a medical examination or a financial statement. [Citation.] CDA and CDSPI never provided assistance to Wright, a paying member, following the termination of benefits. [Citation.] After termination, Wright's British Columbia coverage litigation dramatically changed. He filed an amended complaint in 2004, and the case was finally tried in March 2015.

"Wright alleges he finally uncovered more detail about the 2001 termination of benefits in the January 2013 deposition of Robert Kling, a claims investigator retained by Sun Life. [Citation.] Kling testified that the decision to terminate Wright's benefits wasn't based on medical grounds (i.e., an expert's medical determination that Wright was no longer disabled) or Wright's failure to be under the regular care of a physician. Rather, Kling retained a California private detective, Thomas Sheridan, to investigate Wright's dental practice in Newport Beach and see whether he was practicing prosthodontics (as Wright claimed) or general dentistry (as Kling and Sun Life suspected). Sheridan presented at Wright's office posing as a patient in

4

immediate pain and distress and with limited funds for treatment, requesting both a treatment letter and an estimate. Wright, taking Sheridan's claims at face value, provided him a treatment letter and an estimate. Based on Sheridan's subsequent report to Kling, Kling concluded Wright had in fact returned to general dentistry practice. As such, Kling concluded Wright was no longer disabled under the policy, and the insurer terminated benefits. [Citation.] Wright alleges, 'Sun Life[, CDA,] and [CDSSPI] worked together on this claim.' [Citation.]

"Wright also alleges that sometime before trial in 2015, he learned Sun Life's law firm [Borden] in the British Columbia action also represented CDA and CDSPI at the time he sought advice from them on how to recover benefits on the Policy. [Citation.] Again, Wright maintains [CDA and CDSPI] owed him duties as an insurance broker and financial advisor. Wright alleges two conflicts of interest from this dual representation. First, the law firm [Borden] had a conflict of interest by representing both Sun Life and Wright's insurance broker/financial advisor. [Citation.] Second, and more importantly here, [Borden]'s dual representation shows that [CDA and CDSPI] w[ere] actually acting as a 'double agent,' conspiring with Sun Life in the wrongful denial of benefits. [Citation.]

"The trial judge in British Columbia found in favor of Sun Life (in a proceeding Wright claims was rife with due process violations), and [in January 2019,] the provincial appellate court affirmed (in a decision Wright claims also was rife with errors). Wright chose not to seek review in the Supreme Court of Canada. [Citation.] Wright filed suit in Los Angeles County Superior Court not long thereafter. He voluntarily dismissed the Los Angeles suit in March 2021. This action followed in January 2022."

5

## III.

### WRIGHT INITIATES THE INSTANT ACTION AGAINST CDA WHICH FILES A DEMURRER TO WRIGHT'S COMPLAINT

On January 18, 2022, Wright, acting in propria persona, initiated this action by filing a 318-page complaint in the Orange County Superior Court asserting, as relevant here, a wide array of claims against CDA, including claims for breach of implied contract, breach of fiduciary duty, "intentional fraud and deceit" (capitalization and boldface omitted), fraudulent concealment, constructive fraud/negligent misrepresentation, tortious breach of the implied duty of good faith and fair dealing, professional negligence, intentional infliction of emotional distress, unjust enrichment, unfair insurance trade practices, declaratory relief, and punitive damages.

CDA filed a demurrer to the complaint on the grounds each claim alleged against it failed to state facts sufficient to constitute a cause of action against CDA and was otherwise uncertain, ambiguous, and unintelligible. (Civ. Proc. Code, § 430.10, subds. (e)–(f).)[2]

## IV.

### THE TRIAL COURT SUSTAINS CDA'S DEMURRER AS TO ALL CLAIMS ASSERTED AGAINST IT AND GRANTS LEAVE TO AMEND ALL BUT TWO CAUSES OF ACTION

The trial court sustained the demurrer to all causes of action on several grounds. First, the court concluded the complaint was too uncertain to withstand demurrer and failed to state a claim. In addition, the trial court concluded each of Wright's claims was time-barred.

The court granted leave to amend with respect to all causes of action against CDA except the court did not grant leave to amend as to the unfair insurance trade practices claim and the claim for punitive damages.

---

[2] All further code references are to the Code of Civil Procedure.

## V.

### WRIGHT FILES A FIRST AMENDED COMPLAINT IN WHICH HE ADDS BORDEN AS A DEFENDANT

Wright filed a first amended complaint in which he added over 200 paragraphs of new allegations. The first amended complaint included a claim for unfair insurance trade practices and a claim for punitive damages notwithstanding the trial court's order sustaining CDA's demurrer to those claims without leave to amend.

In addition, Wright added Borden as a defendant and asserted against it claims for breach of implied contract, breach of fiduciary duty, intentional fraud and deceit, fraudulent concealment, tortious breach of the implied duty of good faith and fair dealing, professional negligence, medical negligence, medical malpractice, intentional infliction of emotional distress, and legal malpractice.

## VI.

### CDA AND BORDEN EACH DEMUR TO THE FIRST AMENDED COMPLAINT

CDA and Borden each filed a demurrer to each of the claims asserted them in the first amended complaint. In its demurrer, CDA argued each of Wright's causes of action against it (1) fails to state facts sufficient to constitute a cause of action against CDA; (2) is uncertain, ambiguous, and unintelligible as to CDA; and (3) is barred by the applicable statute of limitations. Borden similarly argued in its demurrer all of Wright's causes of action against it are barred by the applicable statute of limitations and are otherwise "impermissibly uncertain, simply not applicable to [Borden] or otherwise objectionable."

VII.

THE TRIAL COURT SUSTAINS DEFENDANTS' DEMURRERS WITHOUT LEAVE TO
AMEND ON THE GROUND ALL OF WRIGHT'S CLAIMS ARE TIME-BARRED;
JUDGMENTS ARE ENTERED IN FAVOR OF DEFENDANTS

The trial court concluded all of the claims in the first amended complaint alleged against defendants were barred by the governing statutes of limitations. The court sustained the demurrers without leave to amend.

Judgments were entered in favor of CDA and Borden, respectively. Wright filed a notice of appeal on May 12, 2023. In addition to stating the appeal was taken from a "[j]udgment of dismissal after an order sustaining a demurrer," Wright checked the "Other" box on the notice of appeal form and so indicated he was also appealing from an "Order for Defendants Costs – Section 904.1(b)." No such order awarding CDA and/or Borden costs had been issued at that time. Wright does not specifically challenge the fact of or the amount of costs awarded either party in this appeal.

DISCUSSION

I.

GOVERNING LEGAL STANDARDS AND STANDARD OF REVIEW

"'In reviewing an order sustaining a demurrer, we examine the operative complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory.' [Citation.] "'"We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. . . . We also consider matters which may be judicially noticed." . . . Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context."'" (*Mathews v. Becerra* (2019) 8 Cal.5th 756, 768.)

8

"'"When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action."'" (*Centinela Freeman Emergency Medical Associates v. Health Net of California, Inc.* (2016) 1 Cal.5th 994, 1010.) "'We affirm the judgment if it is correct on any ground stated in the demurrer, regardless of the trial court's stated reasons.'" (*Entezampour v. North Orange County Community College Dist.* (2010) 190 Cal.App.4th 832, 837.)

## II.

### WRIGHT'S CLAIMS AGAINST DEFENDANTS ARE TIME-BARRED BY APPLICATION OF THE APPLICABLE STATUTES OF LIMITATIONS

The trial court concluded each of Wright's claims against defendants was barred by their respective statute of limitations. We agree.

"'[F]or a demurrer based on the statute of limitations to be sustained, the untimeliness of the lawsuit must clearly and affirmatively appear on the face of the complaint and matters judicially noticed.'" (*Schmier v. City of Berkeley* (2022) 76 Cal.App.5th 549, 554.) Here, the applicable statute of limitations for each of Wright's claims against CDA and/or Borden range from two to four years as follows: (1) a two-year statute of limitations applies for breach of implied contract, breach of the implied covenant of good faith and fair dealing (based on contract), negligent misrepresentation, and professional negligence claims (§ 339, subd. 1; *NBCUniversal Media, LLC v. Superior Court* (2014) 225 Cal.App.4th 1222, 1230; *Bennett v. Ohio National Life Assurance Corp.* (2023) 92 Cal. App.5th 723, 728; *E-Fab, Inc. v. Accountants, Inc. Services* (2007) 153 Cal.App.4th 1308, 1316; *Cyr v. McGovran* (2012) 206 Cal.App.4th 645, 651); (2) a three-year or four-year statute of limitations applies for a breach of fiduciary duty claim, "depending on whether the breach is fraudulent or nonfraudulent" (*American Master*

9

*Lease LLC v. Idanta Partners, Ltd.* (2014) 225 Cal.App.4th 1451, 1479); (3) a three-year statute of limitations applies for fraud claims (§ 338, subd. (d)); (4) a two-year statute of limitations applies for professional negligence and intentional infliction of emotional distress claims (§ 335.1; *Moss v. Duncan* (2019) 36 Cal.App.5th 569, 574; *Wassmann v. South Orange County Community College Dist.* (2018) 24 Cal.App.5th 825, 852–853); (5) a three-year statute of limitations applies for unjust enrichment claims (whether based on fraud or mistake) (§ 338, subd. (d); *Federal Deposit Ins. Corp. v. Dintino* (2008) 167 Cal.App.4th 333, 348); (6) a one-year or three-year statute of limitations applies for claims based on professional negligence, medical negligence, and medical malpractice (the earlier of one year from discovery or three years from injury) (§ 340.5); (7) a one-year or four-year statute of limitations applies for legal malpractice claims (the earlier of one year from discovery or four years from the wrongful act) (§ 340.6); and (8) the same limitation period for a declaratory relief claim as the legal or equitable claim upon which it is based (*Bank of New York Mellon v. Citibank, N.A.* (2017) 8 Cal.App.5th 935, 943).[3]

---

[3] As discussed *ante*, notwithstanding the trial court's order sustaining CDA's demurrer to the original complaint without leave to amend as to Wright's purported causes of action for unfair insurance trade practices and for punitive damages, Wright included those claims in the first amended complaint. The trial court sustained the demurrer without leave as to unfair insurance trade practices because "[t]his law does not create a private right of action; rather, it is enforced by the Insurance Commissioner. (*Moradi-Shalal v. Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287, 304.)" Also, the trial court explained "'[t]here is no cause of action for punitive damages.'" Wright does not challenge the trial court's ruling as to those two claims in his opening brief. We therefore do not address them further.

All of Wright's claims against CDA are based on allegations of its wrongful acts and omissions with regard to Wright's insurance policy and the claims process leading up to the termination of benefits on that policy over 20 years ago in 2001. Wright's claims against both defendants are also based on the allegation Borden had a conflict of interest when it represented not only SunLife, but also CDA and CDSPI, in the British Columbia action.

But Wright also expressly alleged he learned of Borden's purported conflict of interest in representing all three parties two weeks before the March 2015 trial in the British Columbia action. The allegations of the first amended complaint therefore show all of Wright's claims accrued, at the very latest, by the March 2015 trial in the British Columbia action, at which time Wright knew or had reason to know of the allegations underlying those claims. Consequently, the applicable statutes of limitations on all of his claims began to run no later than March 2015, and the longest limitations period therefore concluded no later than March 2019. Wright did not file his complaint initiating the instant action until almost four years later in January 2022.

Throughout the first amended complaint, Wright alleges defendants and others have conspired against him, particularly in their efforts to defraud him. In his opening brief, he argues he "only concluded that there was a conspiracy involving six parties and 15 causes of action on January 18, 2022 but there remained a missing link in the conspiracy, being [Borden] acting as the conduit for communications[], which was not discovered until September 2023. Wright has good reason to believe there are two perhaps three remaining conspirators to be added to the Complaint. The underlying fraud is a continuing wrong and the last overt act of fraud has not been discovered."

11

Civil conspiracy is not an independent cause of action but a theory of establishing vicarious liability. (*Fuller v. First Franklin Financial Corp.* (2013) 216 Cal.App.4th 955, 958.) "The allegation of a conspiracy in a civil action does not affect the limitations period for the substantive theory of liability involved." (*Id.* at p. 963.) "[W]hen a civil conspiracy is properly alleged and proved, the statute of limitations does not begin to run on any part of a plaintiff's claims until the 'last overt act' pursuant to the conspiracy has been completed." (*Wyatt v. Union Mortgage Co.* (1979) 24 Cal.3d 773, 786.)

That defendants are alleged to have been part of a conspiracy to commit the wrongdoing upon which Wright's causes of action against them are based does not change the limitations periods applicable to those causes of action. As discussed *ante*, all causes of action, including his fraud-related claims, accrued no later than March 2015. Wright does not allege any overt act by any coconspirator, or any act fulfilling an element of any of his causes of action, occurred after March 2015.

Wright also argues his claims are not time-barred because there are no relevant statutes of limitations in Canada and no statute of limitations on a claim for an "act of fraud on the court." (Capitalization omitted.) As explained by the trial court in its minute order sustaining CDA's demurrer to the original complaint, and again in its minute order sustaining defendants' demurrers to the first amended complaint, Canadian statutes of limitations are irrelevant to the instant action. Wright's first amended complaint filed in Orange County Superior Court only asserts causes of action based on California state law and alleges all such causes of action "took place in Orange County, California."

12

In his opening brief, Wright argues at least some statutes of limitations had not run by the time he initiated this action because he alleged the copy of his insurance policy that he was given in connection with the March 15, 2015 trial in the British Columbia action was different than the version of that policy cited by the appellate court in its 2019 decision upholding the trial court's decision. He argues "the trial copy must have been switched or tampered with at some time between March 13, 2015 and January 18, 2019" when the appellate court issued its decision. Wright considers this discrepancy an act of fraud on the court that he did not discover until July 2019 when he studied the court record, making at least his fraud-related claims viable at the time he filed in the instant action in 2022.

As explained by the trial court in its minute order sustaining the defendants' demurrers to the first amended complaint: "Assuming for the sake of argument that Sun Life indeed introduced a 'doctored' copy of the policy into evidence at trial [in the British Columbia action], Wright alleges this was the *only* copy in the record. [Citation.] Since the trial court discussed the terms of this policy in its reasons for judgment [citation], and since the 'doctored' policy was the *only* copy in the record, Wright was on notice of the alleged discrepancy between his policy and the policy in the record by no later than May 2015, when the trial court issued its reasons for judgment." As Wright was on notice about any additional issue regarding the altered policy by no later than the end of trial in May 2015, the longest applicable statute of limitations ran in May 2019.

Wright has not otherwise pleaded facts showing any of the governing statutes of limitations were tolled for any period of time. Wright argues "[i]t took a couple of years for [him] to untangle the web, investigate

the co-conspirators and connect all the dots." (Italics omitted.) But a governing statute of limitations begins to run upon the accrual of a cause of action, regardless of whether a plaintiff has "connect[ed] all the dots" regarding the extent of damages that have been or might be suffered. (See *Pooshs v. Philip Morris USA, Inc.* (2011) 51 Cal.4th 788, 797 ["[W]e have held that 'the infliction of appreciable and actual harm, however uncertain in amount, will commence the statutory period'"].)

All of Wright's claims were time-barred by application of their respective statute of limitations. The trial court therefore correctly sustained CDA's and Borden's demurrers on that basis.

### III.

### THE TRIAL COURT DID NOT ERR BY DENYING LEAVE TO AMEND

When a demurrer is sustained without leave to amend, "we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318; see *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.)

"Absent an effective request for leave to amend the complaint in specified ways, an abuse of discretion can be found "'only if a potentially effective amendment were both apparent and consistent with the plaintiff's theory of the case.'"" (*Jenkins v. JPMorgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 507, disapproved on another ground in *Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 939, fn. 13.)

Wright did not argue in the trial court, and has not argued on appeal, much less demonstrated in either court, there is a reasonable

14

possibility the defects in the pleading of his claims against CDA and Borden in the first amended complaint can be cured by amendment. We therefore conclude the demurrers to those claims was properly sustained without leave to amend.

## IV.

### WRIGHT'S ATTACKS ON THE INTEGRITY OF THE TRIAL COURT

We must address Wright's unsupported attacks in his opening brief on the integrity of the trial court. Here, Wright did not simply argue the trial court erred in sustaining the demurrers, but states in his opening brief that "[t]he only plausible explanation for [the court's] actions and inactions is bribery and corruption."

Accusations of judicial wrongdoing "are serious, and we treat them as such." (*People ex rel. Harris v. Sarpas* (2014) 225 Cal.App.4th 1539, 1557.) However, "serious accusations against a trial judge . . . had better be supported by concrete evidence." (*Cornerstone Realty Advisors, LLC v. Summit Healthcare REIT, Inc.* (2020) 56 Cal.App.5th 771, 793.)

There is nothing in the record to support or justify Wright's attacks on the honesty and integrity of the trial court. We admonish Wright against making further unsupported attacks on the honesty and integrity of the court.

15

## DISPOSITION

The judgments are affirmed. Respondents to recover costs on appeal.


MOTOIKE, J.

WE CONCUR:


SANCHEZ, ACTING P. J.


DELANEY, J.